# Goodman *against* Losey.

A grantor with covenant of general warranty is not a competent witness in an action of ejectment, in which the outstanding title granted by him is set up as a defence.

Whether an actual settlement has been made, duly prosecuted or abandoned, must necessarily be a matter of fact referrible to the jury. The interruption of the settlement for a period of six months would not of itself amount to an abandonment, unless accompanied by acts or declarations indicative of such an intention.

To acquire title by actual settlement, under the Act of 22d of September 1794, it is necessary that grain should be raised: this is not to be construed as meaning grain in its confined sense, but every esculent which may be and frequently is used as a means of supporting a family, and which may be derived from the cultivation of the soil.

ERROR to the Common Pleas of *Potter* county.

Titus Losey against Owen B. Goodman and others. This was an action of ejectment for 220 acres of land in Pike township,

. [Goodman v. Losey.]

Potter county. The plaintiff claimed by virtue of an improve-
ment and settlement commenced in 1831, by Samuel M. Losey; a
warrant to Samuel M. Losey, dated May 23d 1838; a survey in
pursuance of said warrant by the deputy-surveyor of the district,
on the 3d of June 1838, and a conveyance from Samuel M. Losey
to the plaintiff, dated 19th of November 1839.

The defendants did not shów any title in themselves to the'
land in dispute, but relied on an outstanding title in A. Bruner,
viz.: a warrant to Abraham C. Crandall, dated May 8th 1837, for
1000 acres of land, in pursuance of which a survey, including the
land in controversy, was made on the 24th of July 1838, by the
deputy-surveyor, and deed from A. C. Crandall to Jonas W.
Brown, dated 27th of December 1837, and a deed from Jonas W.
Brown to A. Bruner, dated 24th of October 1838.

The cause turned upon the fact whether the actual settlement,
under which the plaintiff claimed, had been prosecuted with due
diligence. The defendants offered in evidence the deposition of
Abraham C. Crandall, the warrantee. It was objected to, on the
ground of interest: and to support the objection the plaintiff
referred to the deed of Crandall to Brown, by which it appeared
that he had given a covenant of general warranty. The court
rejected the deposition and the defendant excepted.

It appeared by the evidence that Losey had leased the land in
the spring of 1836 to a tenant, who remained on it until the fall
or winter of that year, when he left it; that on the same night he
left, the house was burnt, and the land remained unoccupied for
about six months.

M'CALMONT, (President), instructed the jury that abandonment
was a matter of fact to be determined by the jury upon the evi-
dence. If the actual settlement was made by Losey, and he prose-
cuted it with the intention of making it the means of supporting
his family and never intended to abandon it, the accidental cir-
cumstance of leaving the land vacant for six months, especially if
it be accounted for by the misconduct of his tenant, was not of
itself such an abandonment as would destroy his title.

A verdict and judgment were rendered for the plaintiff.

*White*, for plaintiffs in error. There was no kind of privity
between the warrantee and the defendants: they were strangers
to each other. What then was the interest of the witness? He
could neither lose nor gain by the result, because the defendants
did not claim under any title proceeding from him, but set it up
expressly as outstanding.

The evidence proved a legal abandonment of the land, and the
court should have so instructed the jury. 5 *Watts* 174, 337; 10
*Watts* 428.

*Greenough, contra.* An actual settlement consists of various

[Goodman v. Losey.]

progressive acts. 6 *Serg. & Rawle* 249. Time and circumstances are constituent parts of it, and when any question arises about them, it becomes a mixed question of law and fact, which belongs to a jury. 1 *Watts* 46; 5 *Watts* 175; 2 *Watts* 412. The witness was clearly interested in supporting the title which the defendants set up as outstanding, because it was that which he had warranted, and by setting it up and succeeding in establishing it, they would be for ever estopped from denying it. 17 *Serg. & Rawle* 364.

The opinion of the Court was delivered by

Rogers, J.—This is an action of ejectment, and the plaintiff claims title by virtue of an improvement and settlement. The defendants, as the court say in the charge, show no title in themselves, but rely entirely on an outstanding title in one A. Bruner, the grantee of Abraham C. Crandall, whose title rests on a descriptive warrant for 1000 acres, including the land in dispute. On the trial, the defendant offered Abraham C. Crandall, who conveyed the tract to Bruner, as a witness; and the question is, whether the owner of an outstanding title, or what is the same thing, his grantor with general warranty, is a competent witness in a suit against a third person in possession of the land? Before entering into the general question, I would remark, that before the court undertakes to receive such testimony, it should clearly appear there was no connection in interest between the person offered as a witness and the person in possession who wishes the benefit of his testimony. For unless some caution is used, it may frequently happen that it may be the means of introducing interested testimony, or, in other words, the landlord himself will often support the possession of his own tenant, or persons who claim under him. And in this very case, we cannot help believing, that the defendants are but the agents or tenants of Bruner, and that this would have been apparent, but for the accidental circumstance that the sheriff was unable to serve the writ on Bruner, whose name was included in the writ. The testimony, to say the least of it, comes before the court under suspicious circumstances. But, be this as it may, is Bruner, or, what is the same thing, Crandall, a competent witness? We are of the opinion he is not, because he has a direct interest in defeating the plaintiff's title, and, by consequence, sustaining the defendants' possession. For, suppose that in consequence of the testimony the trial results in a verdict for the defendants, and afterwards an ejectment is brought by Bruner, in whom the defendants allege the title to be, what defence, after availing themselves of his title to defeat Losey, can they make? On the production of the record in the suit, accompanied with proof that the defendants had alleged title in Bruner, and thereby defeated the plaintiff, they would be estopped to prove either title in themselves or in a third person; for a party may be as effectually estopped by matter *in pais*, as by matter of record;

[Goodman v. Losey.]

and he is not permitted to controvert what he himself has directly asserted. 17 *Serg. & Rawle* 367. It is contrary to morality, as well as sound policy, to permit a party to avail himself of a particular point in a case, and afterwards take a position diametrically opposite in another, merely because it may be his interest to deny what he has solemnly asserted at another time, and for another purpose.

In answer to the objections to the charge, it might be sufficient to observe that they have not been sustained. The principles applicable to the case are clearly and explicitly stated by the court, with a proper direction that the jury should decide the facts. A right of pre-emption, acquired by improvement and settlement, is the result of repeated acts of labour and expenditure by settlers at different times, and depending upon a variety of circumstances, arising from the state of the country, the progress of improvements in the neighbourhood, and the pecuniary ability of the settler. A settlement cannot be completed at once; it must take time, which may be more or less in different cases; and hence, whether such a right has been acquired by the settler, must, in most cases, be decided by a jury. And for this reason, whether when begun it has been abandoned, must also be decided by them. There are cases, where the conclusion to be drawn from the evidence, taking the truth of it for granted, is not one of fact, but of law, and where an admitted intent to resume the settlement is immaterial, as in *Cluggage* v. *Duncan*, (1 *Serg. & Rawle* 120). But this we cannot consider a case of that description. Losey commenced his settlement in 1831, by building a small cabin, which, when completed, was fit for the residence of man, planting a few potatoes, and residing on the property with his family for about six months. He was succeeded by his tenants, who, with some perhaps inconsiderable interruptions, continued in possession until some time in 1836, when the last tenant, in the night-time, not without suspicion of connivance with Crandall, ran away and burnt the cabin. It is certainly a curious coincidence, that the horses and wagon which conveyed the goods of the tenant, belonged to Crandall; and that the cabin was burnt the same night, connected with the fact that Crandall's warrant, which includes the property in dispute, had not then been surveyed; and that, as appears from the evidence, he was very desirous of becoming the owner of the tract in dispute. It was therefore a case, as disclosed by the evidence, which particularly called for the investigation of the jury; and we see nothing wrong in the court charging the jury, that the interruption of a period of six months would not of itself amount to an abandonment, unless accompanied by acts or declarations indicative of an intention to abandon. So far from its being conclusive evidence of such an intention, the whole case shows the *animo revertendi*, and that the cessation of actual residence resulted either from the act of Crandall, or other circumstances

III.—67　　　　2 U.

[Goodman v. Losey.]

over which the plaintiff had no control. It cannot be said, that because the possession has been vacant for that period of time, although it may be explained, the court is bound to instruct the jury, as a conclusion of law, that the land was abandoned; and particularly if the interruption of the possession is caused by the act of the claimant of land tampering with the tenant, causing him to leave the possession before the expiration of his lease; and when it appears that efforts have been made to continue the possession, which have been defeated by the improper and unwarrantable acts of others. Abandonment is a question of intention; and it would be absurd to say that the settler had intended to abandon, when every act and declaration of his proves directly the reverse.

The court were also right in refusing to give an affirmative answer to the defendant's third point. The plaintiff commenced an improvement by residence and settlement, which he continued, with occasional interruptions, for several years, and which served as a shelter, and in part as a support, for his family. This was within the meaning of the Act, which requires an actual, personal, resident settlement, with a manifest intention of making it a place of abode, and the means of supporting a family. This Act, it is true, as is decided in *Gardinier* v. *Marcy*, (5 *Watts* 341), is to be taken in connection with the Act of the 22d of September 1794, that grain should be raised on the ground. But it would be a narrow construction of the Act, to confine it to grain in its confined sense; but it must be extended to every esculent which may be, and frequently is, used as a means of supporting a family, and which may be derived from the cultivation of the soil. Nor is the quantity of grain raised prescribed; nor is it a material inquiry whether it be adequate or inadequate to the support of the family. It is sufficient that there is an improvement and actual residence; and that the settler evinces an intention, by the cultivation of the soil, to make the property one of the means of supporting his family. In *Gardinier* v. *Marcy*, no grain whatever was raised on the land, which distinguishes it from this case; for it is agreed that cutting and selling timber, without more, will give the settler no pre-emption right.

Judgment affirmed.