HENRY HEITZMAN *v.* BASTIAN DIVIL, WILLIAM SPEESE, and
JOHN SPEESE.

1. Where the title to a chattel is in issue between an alleged bailee of it for use
   without pay, and one who claims under a judicial sale of it as the property of the
   bailee, the bailor is not a competent witness for the bailee.

2. Where a chattel, capable of consumption, is left with the defendant by a pur-
   chaser at a judicial sale, if left with him for his own use and consumption, or the
   same chattel is not to be returned to the lender, it will be liable to execution
   as the property of the defendant; but if left without any agreement that the
   defendant is to have it for his own use and consumption, it will not be so liable.

3. Allowing one to use a wagon and horse and a barn for getting in and threshing
   grain, the title to which is in dispute, will not implicate the person allowing it as
   a trespasser.

ERROR to the Common Pleas of Union.

*July* 26.   The action in the court below was trover and conver-
sion, brought by Henry Heitzman against Bastian Divil, William
Speese, and John Speese, to recover damages for taking away and
converting to their own use a stack of grain.

Both parties admitted that Bastian Divil was the original owner
of the stack of grain.   It seemed that he was a tenant of Daniel
Rangler, and on his land raised the grain; he became indebted to
Rangler to a considerable amount; Rangler sued him, but before
he could get judgment, Bastian Divil and his brother John went to
a justice of the peace, and Bastian confessed judgment in favour
of his brother John for $85; they immediately took out execution
and took it to the constable.   The constable levied by virtue of that
execution, on all Bastian's personal property, except such as was
exempt by law, including the stack of grain, advertised and sold
it.   The greater part of the property, including the stack of grain,
was purchased by John, and left in the possession of his brother
Bastian.   John then gave notice in the "Miltonian" that he had
loaned said property, including the stack of grain, during his plea-
sure, to his brother Bastian.   Rangler, after he obtained judg-
ment against Bastian, took out an execution and placed it in the
hands of a constable, who levied on said stack of grain, it not hav-
ing been removed, advertised and sold it, and Henry Heitzman
became the purchaser.   After the purchase by Heitzman it was
hauled by Bastian, with the team of Speese, to the barn of the
latter and threshed.   One of the witnesses proved that he asked
Wm. Speese to let him take the grain away from his barn, who
replied that he could not let him do so, it did not belong to him, but
to Divil.   Heitzman asked Speese if he harboured the grain, he said

he did, it was his own barn, and he could harbour anybody's grain he pleased.

During the trial John Divil was offered as a witness on part of defendants; he was objected to, but admitted by the court. It was contended by the plaintiff that the judgment confessed by Bastian to John Divil, was fraudulent and void as to Rangler's judgment; that John Divil could not be a witness, as he was interested; and that the loaning of the stack of grain by John, after his purchase, to Bastian, made it the property of the latter, even if the sale on the first execution was valid.

The court was requested to charge the jury: 1. That if the jury believe, from the evidence, that John Divil loaned the stacks of grain in controversy to Bastian Divil, then it was liable to be again taken in execution, and sold as the property of Bastian Divil; and that the fact of it being so loaned is clearly established by the advertisement given in evidence by defendants.

Answer of the court (WILSON, President).—"If you are satisfied, from the evidence, that the loan was made of this grain to Bastian for consumption, by John, and the same grain was to be returned in kind, and not the same property, or was to be paid for, the borrower acquires a title in the thing loaned for consumption: property loaned where the same article is to be returned, is clearly distinguishable. If you find that the loan of this grain was unto Bastian for his own consumption, and the same grain was not to be returned to John, the law applicable to it is as here stated. But if the grain was merely left in the possession of Bastian until John could get it away, that he could do without subjecting it to executions against Bastian. You will see the notice given by John in the Miltonian, and you will determine the character of the loan. The property may be left in the possession of the defendant in the execution, without the purchaser's title being affected by it. The purchaser may leave it with the defendant to thresh it out and to dispose of it for him, and it becomes a question of fact for you to determine how the property was left. If intended for defendant's own use and consumption, when left with him by the purchaser, without limit, an interest would immediately vest; but if merely left there with the defendant in the execution, without any agreement that Bastian was to have it for his own use and consumption, it would vest no title, and his so loaning it would of itself be no evidence of fraud; how the transaction was, is for you to determine."

2. That the loaning of grain by one man to another, makes it the absolute property of the borrower.

Answer of the court: "If loaned for consumption, or the same grain is not to be returned to the lender, then the law is as here stated."

With regard to the liability of the defendants, Speese, the court charged thus:—

"William and John Speese stand in a different situation, and if they did no more than allow Bastian the privilege of threshing the grain out at their barn, and even loaned him horses and wagon to haul it there, it would not implicate them as trespassers. It is what one neighbour may certainly do for another."

Verdict for the defendants.

In this court it was assigned for error, that the court below erred:

1. In admitting John Divil as a witness.

2. In answering the plaintiff's points.

3. In so much of the charge, as related to the liability of the defendants Speese.

*Miller*, for the plaintiff in error.—1. Patterson *v.* Reed, 7 W. & S. 144; 3 Starkie's Ev. 1729; Welsh *v.* Cooper, 8 Barr, 217.

2. Loan for use is to be distinguished from loan for consumption. The latter is the loan of corn, wine, &c., that may be valued by weight or measure, in which the property is transferred. The value is to be returned in property of the same kind, and the borrower is to bear the loss of them, even if destroyed by inevitable accident: 2 Kent. Com. 573; Jones on Bailments, 74; Nobell *v.* M'Clintock, 6 W. & S. 58. It was error in the court refusing or evading to gain a distinct answer to a question distinctly propounded: Smith *v.* Thompson, 2 S. & R. 49; Dubois *v.* Lord, 5 Watts, 49; M'Clung *v.* Willard, Ib. 275.

3. Herger *v.* M'Mains, 4 W. 418; 8 Wendell, 613; Williams *v.* Sheldon, 10 Wendell, 654.

*Linn*, contrà.—1. To exclude John Divil, he must be interested in the *event* of the suit, or in the *record* as an instrument of evidence: 2 Starkie, Ev. 746; Bennet *v.* Hethington, 16 S. & R. 195. The owner of personal property, competent witness in a suit by a possessor against the sheriff for selling it: Trovillo *v.* Shingle, 10 W. 438; Bayley *v.* Simpkins, Kelly's Ga. R. 392; Wolff *v.* Carothers, 3 S. & R. 240; 2 Day. 126; 11 John. R. 186; 1 Phillips Ev. 39; Van Ness *v.* Terhune, 3 Johns. Cases, 82; Moore *v.*

Hitchcock, 4 Wendell, 292; Varick *v.* Jackson, 2 Wendell, 166; Carothers *v.* White, 8 Mis. 216; Stodard *v.* Mix, 14 Con. 12; Marsh *v.* Pier, 4 Rawle, 285; Kinne's L. C. for 1846, p. 256; same for 1848, p. 242.

2. Personal property sold by sheriff, and left in possession of defendant, cannot be sold for a debt due at first sale: Myers *v.* Harvey, 2 Pa. R. 478. Loan of chattels, liable to be turned into sale, vests no property: Clark *v.* Jack, 7 W. 375; Duncan *v.* M'Cumber, 2 W. & S. 264. A debtor may prefer a creditor by confessing judgment.

3. To render the defendants liable, they must have acted jointly: 10 Wendell, 656.

The opinion of this court was delivered by

BURNSIDE, J.—The evidence shows that Bastian Divil voluntarily confessed a judgment to his brother, John Divil, with the object of postponing Rangler, his landlord.

On this judgment an execution issued, and the grain in question was sold to John, who left it with Bastian, and gave notice in the public papers that he *had loaned it to Bastian during his pleasure*, of which the public were to take notice. If this had been a fair and *bonâ fide* sale, according to the principles settled in Myers *v.* Harvey, 2 Pa. R. 478, the title to the property would have remained to John.

Rangler obtained a judgment against Bastian, and had the same stack of grain sold on his execution; Heitzman became the purchaser, and demanded the grain; Divil refused to give it up, the Speeses said they had nothing to do with it, that they merely lent their barn to Bastian to thresh it. The material question presented for our consideration is: Was John Divil a competent witness in this action? Bastian was the bailee of John. Bailment is founded on a contract, express or implied. The loan by John to his brother Bastian, falls under Sir William Jones's 3d class, *Commodatum*, or loan for use without pay: Jones on Bailments, 36; Ib. 117. Bastian being the only one benefited by the loan of the grain, he was bound, by the obligation arising from the implied contract, to take extraordinary care of the grain: Todd *v.* Figley, 7 W. 544.

The title or right to the property remained in John, it being lent during his pleasure. Damages are recoverable by a bailor for time spent and expenses incurred, in searching for property wrongfully taken from the possession of a bailee: Bevact *v.* Lockwood, 20 Wend. 223. One delivers personal property, to be returned

after a certain time; at the expiration of the term, the same identical property reverts to, and the title is in, the bailor. Hurd *v.* West, 7 Cowan, 752.

It is a general rule that a witness interested in the subject of the suit, or in the record, is not competent to testify on the side of his interest: 1 Greenleaf's Ev. § 411. The grain was John's. If his allegations were true, it was his property; Bastian held it at the pleasure of John, as his bailee. This is putting the case in the most favourable point of view for the Divils; for if the first sale was fraudulent, or if there was an absolute gift by John to Bastian, then the second sale would have been legal and enabled the plaintiff to recover. John was clearly interested in the subject of the suit, and I think in the second he was maintaining his own right and title to the grain, and if John had to bring a suit against Bastian when he chose to demand the grain, this judgment could be used by way of inducement, or to establish a collateral fact, like the record of a conviction, to show the legal infamy of a witness, or to let in proof what was sworn at the trial: 1 Greenleaf's Ev. § 527. If John instituted an action against Bastian for the grain, or the value of it, this judgment might be given in evidence on the principle stated, to assist John to establish his right to recover. A party may be as effectually estopped by matter *in pais* as by matter of record, and he is not permitted to controvert what he himself has directly asserted: Goodman *v.* Losey, 3 W. & S. 526. We think it was error to admit John as a witness in this case. We are unable to discover anything of importance, or any error in either of the other points made or errors assigned. The points were substantially answered. The law was correctly stated as to William and John Speese.

The judgment is reversed, and a *venire de novo* awarded.