# Balliot *against* Bauman.

If land be vacant when a return of survey is accepted at the Land Office, and patent granted, and no intervening title exists in a third person, one whose claim from the Commonwealth originates after the patent cannot dispute the right of the patentee on the ground that the survey and return were unduly accepted.

The patent merges irregularities in former proceedings, and is notice to a subsequent claimant that the land is not vacant.

THIS was a writ of error to the Court of Common Pleas of *Northampton* county, in an action of trespass for cutting timber trees, brought by John D. Bauman against Aaron Balliot, in which a verdict and judgment were rendered for the plaintiff. The pleas were not guilty, and *liberum tenementum*, and the question was on the title.

The plaintiff gave in evidence a patent to himself for 94 acres, dated 21st March 1837. This patent was granted on an application to John Rhodes, dated 22d June 1768. The survey was made on the 25th October 1810. It was returned and accepted on the 22d February 1837. The lands had been appraised by the commissioners of the county at No. 4, under the law of the State on that subject. This constituted the plaintiff's title.

The defendant gave in evidence a warrant to himself for 50 acres, dated 24th March 1837, and a survey made on the 3d April 1837; also an application of John Rhodes, dated 22d July 1768, and a survey on it of 126 acres, made the 22d July 1768. Also deed of John Rhodes to Joseph Rhodes, dated 1st April 1791. Deed of Joseph Rhodes to Andrew Myer, dated 21st February 1794. Deed of Andrew Myer to Henry Driesbach, 20th January 1796. Deed of Henry Driesbach to Casper Frederick, dated 6th February 1802. Deed of Casper Frederick to Peter Frontz, 4th September 1807, and the deed of Peter Frontz to Henry Dengler, 11th August 1830. Also a warrant to John Cook, dated 13th August 1793, for 400 acres; survey dated 22d September 1793. Patent to John Cook dated 14th March 1794. Assessment as unseated lands, 427 acres in the name of John Cook for the years 1832, '3, '4, '5. Also the treasurer's sale book, for the year 1836; by which it appeared this tract had been sold to Stephen Balliot

[Balliot v. Bauman.]

for nine dollars.  Also the treasurer's deed to Stephen Balliot, dated 2d August 1836.  Bond for the surplus money, of same date, marked, filed in the Prothonotary's Office, 30th August 1837.

The plaintiff gave in evidence the assessment of seated lands, from the year 1818 to the year 1836.  This showed 517 acres assessed as seated to the plaintiff for the years 1818 and 1820, and 450 acres for each of the other years.  About the one half of the land granted by patent to the plaintiff was for land that was then vacant, and the other half was for land included in the Cook warrant and patent.  The warrant to Balliot was for that portion of plaintiff's patent that was vacant, when it was granted to the plaintiff.

The court charged the jury as follows:

The defendant contends that the patent is void.  The position he takes is this: that inasmuch as the application of Rhodes had been laid on other lands, which are still held, as appears by the deeds which have been given in evidence, the plaintiff could not derive title through that same application, to any other lands.  It is true that this location had been surveyed on other lands, embracing in quantity 126 acres; and that this land is now held by that title, and has been long in possession of the various vendees, and improved by them.  The land covered by the plaintiff's patent is two miles distant from the 126 acres.  On the facts thus stated the question is, did not the patent, under the circumstances of the case, vest in the plaintiff a good title to all the land covered by it, that was vacant when it was issued?  I will readily concede that the officers of the Land Office are but public agents entrusted with the power of granting the vacant lands of the Commonwealth, in the manner and on the terms prescribed by law.  They are no doubt bound, in the discharge of their duty, to conform to the conditions thus dictated.  If they do not thus conform, any citizen may contest the validity of the grant.  Thus if land was patented, without the purchase money having been paid, or secured to be paid, or if land that was subject to the condition of improvement, was granted, when no improvement or settlement had been made, in either of these cases, the title would not be good.  In these cases the patentee would have produced the evidence of title, without having paid to the State the consideration required from him by law, and therefore as to him no title would have passed from the State.

In this case the plaintiff paid to the State the full consideration money.  On a new warrant nothing more could have been exacted from him.  The survey having been made, returned and accepted, and the entire consideration paid, and a patent having issued, can the State, after this, grant this same land to another?  When this survey was made and the patent granted, so far as the land covered by them was vacant, it was completely separated from the remaining unappropriated mass of lands of the Commonwealth.  It

[Balliot v. Bauman.]

was no longer vacant, but laid off, and granted in consideration of the legal price paid. Can a warrant issued after this give title? The irregularities complained of, did the State no injustice. The price was paid into the treasury, and the fees to the officers. They did not prejudice any existing right of the defendant. When he applied for and took his warrant, the plaintiff's title appeared of record. He proceeded with notice of the prior grant. Claiming by subsequent grant, all the recitals in the patent are evidence against him. Those things which he complains of were preliminary matters, and where no injustice is done, may they not be covered by the patent? To accomplish the purpose of justice and equity, is it not our duty to consider them as cured? A patent is a title from its date, when there is no fraud, and the consideration has been paid by the patentee. The land it covers is then appropriated, and remains no longer vacant, nor subject to further grant by warrant. A patent is the deed of the State, attended with all the solemnities peculiar to the official grant of a sovereign party. Can this party, though it be a sovereign State of this Union, be permitted to pronounce her own solemn deed a nullity? If she can, it must be by a mere act of power which must find its vindication in reasons which I have not yet heard. A State is in reason, justice and law, as much bound by her contracts as an individual. After all, she is but a contracting party. Her pretensions are or ought to be subject to the scrutiny and decision of those common tribunals, which are established for the security of all our individual rights. Can she claim by her officers to act as judge in her own case, and thus proceed to nullify her own solemn act? To do this would, in my judgment, be to disregard entirely those great principles of justice, which are universally acknowledged. The patent was a contract executed—a full and perfect grant. It extinguished all the title which the State then had. It is a contract on the part of the State, that she will never reassert the right thus granted. She receives the plaintiff's money, and keeps it, and at the same time proceeds to take from him, that which she gave him in consideration of it. Can she thus unjustly annul her own grant? Is she not restrained from the commission of such an outrage upon private right, by the general terms of our political constitution? It appears to me that she most certainly is, and that by the words and spirit of the constitution, which is the supreme law of the land, no State can by direct or indirect means impair the obligations of her own contracts. It cannot be done by the executive or legislative branches, much less by an inferior authority. That a State should thus annul her own grant, would be as repugnant to justice and constitutional law, as it would be to absolve individual vendors of property from the obligation to execute their contracts. In this case there is no allegation of fraud. The officers must have known what they were doing. The survey and patent purport to be founded on the Rhodes applica-

[Balliot v. Bauman.]

tion. There was no misrepresentation or fraud, so far as the evidence goes. The consideration was fully and honestly paid. I therefore lay down to you as the law, that the plaintiff's patent conveyed to him a good title to all the land covered by it, that was then vacant, and that the State is estopped by it from denying the validity of his title, and that the defendant's warrant vests in him no title. From what I have said, it is obvious that the plaintiff has a right to recover damages for any trespass committed by defendant or by his authority, by cutting timber on this portion of the land. Whether any timber and how much was cut thereon, is a matter of fact for your decision.

The court then charged the jury, at length, in relation to the plaintiff's claim to that portion of the John Cook tract covered by his patent, and in favour of the defendant as to that part of the case; and concluded as follows: "John Rhodes sold but 100 acres of his survey to Joseph Rhodes. This left 26 acres still the property of John. There is no proof that Carneys were his heirs, nor that he had left the land to them by will. As the plaintiff's patent is subsequent to the grant to Cook, the recitals in it are not evidence against the title under this prior grant. There is nothing in the evidence that would give the plaintiff title, by laying his claim on this land, which had been patented to Cook. As to that, his title is most certainly defective. As to that part which was vacant, his title is good, and if the defendant cut timber on this part of his close, you will render a verdict in his favour for such a sum as under all the circumstances, you think right."

The verdict was in favour of the plaintiff $25, for the trespass committed on the tract of 52 acres 160 perches north of the Cook line.

Errors assigned:

1. The court erred in deciding that the defects in the plaintiff's survey were cured by the patent.

2. In deciding that the plaintiff's patent conveyed to him a good title to all the vacant land covered by it, and that defendant's warrant and survey vested in him no title.

3. In withdrawing from the jury the question of fact, whether the officers of the Land Office acted advisedly in granting the plaintiff's patent, or whether the same was obtained by misrepresentation and fraud.

*Hepburn*, for the plaintiff in error.

The plaintiff's patent was founded on an application which had been filled and perfected. No further survey could be made upon it. The survey of 1810, returned and accepted on the 22d of February 1837, was void, and could not be made good. No survey is evidence unless the authority to make it be shown; and there was no authority for this survey. Some warrant or authority from the Land Office must be shown before a survey is evidence.

v. — 20

*Wilson* v. *Stoner*, (9 *Serg. & Rawle* 39). After a survey returned, a second survey is merely void. *Deal* v. *M'Cormick*, (3 *Serg. & Rawle* 349); *Oyster* v. *Bellas*, (2 *Watts* 397); *Smith* v. *Fultz*, (4 *Serg. & Rawle* 473). Here a man having no shadow of right attempts to get a second survey upon the application. A survey once made and completed cannot even be abandoned by the act of the party, and the warrant or application laid elsewhere; but here that is attempted, whilst the party admits the first survey for 126 acres to be good.

As to its being received at the Land Office, that was through mistake and imposition. By the Act of 1781, a patent is to issue to one having a grant, warrant or location. The land officers are merely ministerial, and cannot affect vested rights. *Burd* v. *Seabold*, (6 *Serg. & Rawle* 137). The government cannot dispense with the rules of law. 4 *Dall.* 243. It lies on a party producing a patent to show it was not unfairly obtained : but in the plaintiff's patent it is recited that it was a re-survey of a larger tract, viz. of 126 acres. The recitals in the patent were no notice to us: they misled us. If one link in the chain of title is not recorded, the record is not notice. *Keller* v. *Nutz*, (5 *Serg. & Rawle* 246); *Smith* v. *Fultz*, (4 *Serg. & Rawle* 473).

*Reeder*, contra. It may as well be presumed that there was a mistake in the patent in reciting that the survey was made on the application 3421, as that there was any imposition. The land officers may have applied the survey to the wrong place. But the patent is *primâ facie* evidence against all persons claiming subsequently, and the defendant does not show it void. Moreover, if the recital is false, it is the act of the Commonwealth, not ours. The cases cited are of conflicts with third persons having intervening rights before patent issued ; but here the land was vacant when our patent issued. In *Oyster* v. *Bellas* there was a chamber survey and patent; and it was held the survey was not void. The defendant claiming after us, cannot contest our right. *Penrose* v. *Griffith*, (4 *Binn.* 231). This is a leading case, followed by *Downing* v. *Gallagher*, (2 *Serg. & Rawle* 455). The tract was appraised to us, and we were proceeding the fall before to get our title. The defendant had notice by the patent and had actual notice. He lived on the adjoining tract, and must have known of the appraisement. There was no evidence of fraud, and therefore it would have been error to leave it to the jury.

The opinion of the Court was delivered by

SERGEANT, J.—A patent is not operative against the rights of a third person existing before the issuing of the patent. He may show that his right is better than that of him who obtained the patent, and for that purpose may inquire into the prior title of the patentee, whether by warrant, survey, settlement or otherwise,

[Balliot v. Bauman.]

and show that his own equitable title is better. But one who purchases after the issuing of the patent, and whose whole claim originates subsequently to its date, is not at liberty to search into imperfections in the previous title of the patentee. If there are any such which the Commonwealth has chosen to overlook, a third person has nothing to do with it. The patent conveys the full legal title of the State, and is, as to her, a merger of the previous proceedings and a waiver of informalities; it is, moreover, full and express notice to every person whatever that the land has been granted away and is not vacant.

In the case before us, the defendant applied for his warrant after the Commonwealth had issued a patent to the plaintiff for $94\frac{1}{2}$ acres of land, and had received the purchase money and fees. He alleges that the plaintiff's survey was void, being made under application No. 3421, 22d of June 1768, for 100 acres; which application had been before fully executed on land at a distance from the present. There was an irregularity in this, but nothing more. The survey of these $94\frac{1}{2}$ acres, in 1810, was made by a deputy-surveyor, and this survey was afterwards adopted by the Land Office. The land was vacant when the patent was issued. There being no intervening claim, the land officers, after accepting such survey and granting a patent upon it, could not grant the land a second time. And as to fraud and imposition, we have no evidence of it, nor is it for the defendant to allege it. It is sufficient, as to him, that the Land Office adopted the survey, though not regularly made, on receiving the purchase money and all the fees of office. We are therefore of opinion there was no error in the charge of the court.

Judgment affirmed.