# The Broad Top Coal & Iron Co. *versus* The Riddlesburg Coal & Iron Co.

1. G. died seised of land intestate without issue or known collateral kindred, leaving a mother and a widow, who survived the mother. *Held*, that the land passed to her under the Act of April 8th 1833, § 10 (Intestates).

2. Kerr took out a warrant in 1794, the survey was returned and accepted in 1830 and patent issued in 1831. Hamilton made an improvement in 1820, which he kept up. He took out a warrant in 1847, which was surveyed in 1853, including part of the Kerr survey, but he held no adverse possession on the Kerr survey. *Held*, that Hamilton had no title within the Kerr survey.

3. Hamilton marked lines on the Kerr survey. *Held*, that without actual possession this gave Hamilton no title by the Statute of Limitations.

4. A presumption against a senior title does not exist in favor of a junior title.

5. The possession is presumed to be in the owner of the title until he is disseised by actual ouster.

[Broad Top Coal Co. *v.* Riddlesburg Coal Co.]

6. A patentee is trustee only when there is a better owner of the land from the Commonwealth.

7. An improver can obtain no title to appropriated land or take up disconnected vacancies severed by intervening appropriated land or hold adjoining vacant land by settlement on appropriated land.

8. Residence and cultivation are necessary ingredients of a settlement.

9. It is not error to send a jury back to reconsider a verdict, about to be given against the charge of the court.

10. Ament *v.* Wolf, 9 Casey 331, remarked on.

May 9th 1870.   Before Thompson, C. J., Agnew and Sharswood, JJ.

Error to the Court of Common Pleas of *Bedford county* : No. 20, to May Term 1870.

This was an action of ejectment for 520 acres of land, by The Riddlesburg Coal and Iron Company against The Broad Top Coal and Iron Company; the writ was issued August 13th 1866.

On the trial the plaintiff filed an amended description specifying a number of tracts amounting in the whole to about 522 acres; amongst these tracts were : "Isaac Barnett, 50 acres," "Isaac Barnett, 52 acres 80 perches," "part of John Hamilton, 88 acres 120 perches." The defendants disclaimed title to all but these three tracts. The verdict was for the plaintiffs for the 88 acres and 120 perches. The defendants having taken out the writ of error, the only question in the case related to this tract.

The case was tried, July 22d 1869, before King, P. J. The plaintiffs gave in evidence : warrant March 21st 1784 to John Kerr for 400 acres and survey April 26th 1794 for 431 acres; warrant March 13th 1794 for 400 acres to Barnet Mowing, and survey April 26th for 432 a. 30 p.; warrant March 14th 1794 to John Stone for 400 acres, and survey April 24th for 466 a. 71 p.; warrant March 21st 1794 to Isaac Kerr for 400 acres, survey April 27th 1794 for 465½ acres; resurveyed October 24th 1830 and accepted November 6th 1830.

Several patents February 22d 1831 to John R. Coates for the above-mentioned tracts.

Deed March 26th 1831, John R. Coates to Elihu Chauncey for an undivided half of the above tracts; deed June 13th 1842, John R. Coates to John Savage for the other half of the same tracts. They then gave evidence, deducing the title of the lands, July 2d 1853, to William H. Irwin. Deed August 9th 1853, William H. Irwin to William Gleim and nine others for an undivided half of the land, being 1-20 to each; deed August 19th 1853, William Gleim to Henry Carpenter for 1-40 of the land; deed, W. H. Irwin, November 22d 1853, to John N. Lane for the other half of the land. On the 7th June 1860, Lane's title was vested in the Riddlesburg Improvement Company.

On the 7th of September 1860, all the parties who claimed under the deed from Irwin of August 19th 1853, including Elizabeth

[Broad Top Coal Co. v. Riddlesburg Coal Co.]

Benjamin Penn.

Kerr Survey.
Stone Survey.
Hamilton Survey.

Hamilton's House.

A
B
C Actually occupied.

88 acres 120 p.

JOHN HAMILTON.

101 acres 79 p.

B
C

Isaac Kerr, 465¾ acres.
Warrant. 21st March 1794.
Surveyed, 27th April 1794.
Resurveyed, 24th October 1830.
Accepted, 6th November 1830.

John Stone, 466 acres 71 p.
Warrant. 14th March 1794.
Surveyed, 24th April 1794.
Patented, 22d February 1831.

Gleim, widow of William Gleim, for his remaining interest, conveyed the undivided half of the land to the Riddlesburg Improvement Company.

The plaintiffs then gave evidence that William Gleim had died intestate without lineal or collateral relatives except his mother who had since died. On the 18th of June 1864 the title of the Riddlesburg Improvement Company was vested in the plaintiffs. The plaintiffs here rested.

The defendants gave in evidence: warrant May 22d 1835 to Isaac Barnett for 50 acres and survey April 3d 1838 for 52 a. 80 p.; warrant 1837 November 7th to Isaac Barnett for 50 acres "including an improvement, interest from June 1st 1790," and survey for 50 acres, warrant September 24th 1840; warrant to Samuel Forbes for 300 acres "including an improvement, interest from the 1st of February 1833;" warrant May 8th 1846 John Hamilton and Levi Evans for 57 acres and survey August 9th for 52 acres:—

March 9th 1847. Application of John Hamilton for a warrant for 100 acres in Broad Top township, founded on an improvement commenced in 1820. May 31st. Warrant to John Hamilton for 100 acres, giving a precise description of the land. August 19th, Survey for 90 acres. June 30th 1853. Order of resurvey; resurvey 101 a. 79 p. November 25th 1854, Patent to John Hamilton for 101 a. 79 p.

This title was vested in the defendants, October 3d 1864.

The annexed draft exhibits the tract in dispute, &c.

John Hamilton testified that he had known the improvement of James Hamilton (his father) since 1825; he claimed at first about 300 acres; the improvement was blazed without a survey; "Isaac Barnet had made an improvement on the other side of the creek, and my father and he made a consentable line, by which the claim was reduced, and they agreed that the line should be along the creek; the part thrown off is included in the Forbes survey; * * * the line on the Benjamin Penn, between the w. o. and b. o., is the line my father claimed to; father reduced his claim to about one hundred acres; he gave the land to me, and I took out a warrant, and had it executed; the improvement was occupied by my father and others; my father lived on it as long ago as I can remember; he lived there some seven or eight years that I know of, and then moved on the Benjamin Penn; shortly after he left, some one went on; the improvement was regularly kept up; there were some intervals; not more than six months or so at a time; don't think it was idle for a year at one time."

There was other evidence as to the improvement of Hamilton having commenced in or about 1820. There was no evidence that that portion of the land covered by the Hamilton survey, which was within the Kerr and Stone surveys, had been held adversely

by Hamilton and those claiming under him so as to give title by the Statute of Limitations.

The plaintiff's sixth point was :—

"A patent, as between the patentee and the state or a stranger, is evidence that all the previous steps leading to it have been regularly pursued, unless the contrary is proved by the person who attempts to impeach the validity of the patent, and that the patent is full and express notice to every person that the land has been granted away."

The defendants asked the court to charge :—

"1. That plaintiffs having amended their description, and defendant having disclaimed as to part of the land embraced in the amendment, there can be no recovery for the part so disclaimed, so as to carry costs.

"2. That if the jury believe that Hamilton began his improvement in 1820, marked his boundaries at that time, and he and those claiming under him continued to reside there, farm, occupy and claim the land up to said boundaries; and if any part of the cleared land was upon the John Stone and Isaac Kerr surveys, and so continued for twenty-one years and upwards, then the plaintiffs can recover no part of the John Hamilton survey—eighty-eight acres, one hundred and twenty-one perches.

"3. That plaintiffs have shown no such evidence in this case as will enable them to recover anything by virtue of the Isaac Kerr warrant; that having shown no title to said warrant, the patent of 1831 to Coates enured to the benefit of said Isaac Kerr.

"4. That when the survey on Isaac Kerr warrant was returned, such survey enured to the benefit of John Hamilton, if the jury believe that said Hamilton had before that time commenced a bonâ fide improvement, and included that part of the Kerr survey now claimed by plaintiffs within the lines of his improvement, and that, too, notwithstanding the fact that John Stone, Isaac Kerr, Benjamin Penn, and John Hamilton united at a common corner."

Judge King, after referring to the grounds of the plaintiffs' claim to the three tracts in controversy, &c., charged :—　　　:

["Patents were issued for these three tracts of land to John R. Coates on the 22d of February 1831, whose title thereto has been regularly deduced by a long chain of conveyances to the plaintiffs."] * * *

"The defendants also claim title to the land included in the survey on the warrant to John Hamilton. This warrant was founded on an improvement commenced by James Hamilton about the year 1820. He built a house, cleared land, and raised grain on land that, so far as we know, was vacant and unimproved. He marked boundaries, by going round the land and blazing trees, and included some three hundred acres or more. Subsequently, it was agreed between him and Isaac Barnet, who had commenced

an improvement on the other side of the creek, that a line should be run along the creek as a division between them. James Hamilton kept up this improvement, by himself and tenants, till about the year 1846, when he either gave or sold his right thereto to his son, John Hamilton, who obtained a warrant therefor on 31st March 1847, and had it surveyed first on 19th August 1847, embracing ninety acres, and afterwards, on 20th June 1853, had it resurveyed, taking in one hundred and one acres seventy-nine perches.

" It appears that 88 acres 121 perches of this survey are included in the older surveys of John Stone and Isaac Kerr, which will take and hold the land unless an adverse possession, continued and uninterrupted for twenty-one years, can be shown. There is, however, no such evidence of adverse possession of the land covered by the John Stone and Isaac Kerr surveys as ought to be submitted to a jury, and we therefore instruct you, that the defendants have shown no title to the portion of the land in dispute to overthrow that of the plaintiffs."

The court affirmed the plaintiffs' 6th point, and answered the defendants' points as follows :—

" 1. The parties went to trial on the description contained in the writ and the plea of not guilty. The amended description, filed by both parties during the progress of the trial, places the parties in the same position as if the amended description and amended plea had been filed before going to trial, and especially when neither of them allege surprise. This is not the time to express any opinion in regard to the effect of the pleading upon the costs.

" 2. We have already stated to the jury, there is not sufficient evidence of possession to be submitted to them on the Statute of Limitations, so far as respects the Hamilton survey, and we therefore refuse to affirm this point.

" 3. We decline to affirm the proposition contained in this point. The patent, having been issued to John R. Coates before the date of the Hamilton warrant, is sufficient evidence of title in Coates, and all persons claiming under him, against these defendants, claiming under the Hamilton title.

" 4. Hamilton's improvement was commenced after the date of the John Stone warrant and survey; and, therefore, no title can be acquired by him to any part of the land covered by that warrant in virtue of his settlement, and we cannot, for this reason, accept the rule contended for as the law of this case.

The following entries appear on the record in the case:—

" July 23d 1869, the jury came into court with a written verdict and handed the same to the court, and the court observed that the verdict, as far as related to the Hamilton tract, was against the charge of the court, and thereupon the counsel for the plain-

[Broad Top Coal Co. v. Riddlesburg Coal Co.]

tiff asked the court to send the jury back to their room, and, several of the jurors expressing a desire to reconsider the verdict, the court did direct the jury to reconsider their verdict, so far as concerns the Hamilton tract. The verdict in the mean time was copied on the minutes.

"To this order of the court the counsel for the defendant except, and pray the court to seal a bill of exceptions, and it is now done."

The jury returned the following verdict:—

"July 23d 1869; jury find for the plaintiffs all the land in dispute in Bedford county, excepting the two parts or surveys in the name of Isaac Barnet; one of fifty-two acres eighty perches, and the other of fifty acres, as on the draft filed July 22d 1869."

The defendants took a writ of error and assigned for error the parts of the charge in brackets; the answers to the points and the order of the court in relation to the verdict.

*J. Cessna*, for plaintiffs in error.—As to the first assignment: If Gleim left collateral heirs the title was in them; if not, it was in the Commonwealth, the widow being dead before the trial. The unqualified answer to the plaintiffs' point was erroneous, because Hamilton was not a stranger. As to the 4th error, an owner of a junior title who interferes with a batch of surveys is not bound to clear and cultivate a part of each survey in the batch to acquire title by the statute. As to 5th and 6th errors, Coates's patent was for the benefit of the true owner; this was Hamilton.

*S. L. Russell* and *F. M. Kimmell*, for defendants in error, as to the second error, cited Brown *v.* Galloway, 1 P. C. C. R. 291; Balliot *v.* Bauman, 5 W. & S. 150; Whitmire *v.* Napier, 4 S. & R. 290.

As to the 4th error. It was proved and not disputed that the Hamilton improvement was outside of either the Stone or Isaac Kerr surveys. It was conceded that the title under the John Stone warrant and survey commenced in 1794. The land held under that warrant and survey was, therefore, appropriated before the adjoining improvement of Hamilton was begun, and the same is true with regard to the title under an old warrant and survey in the name of Benjamin Penn. The Stone survey is on one side of the Hamilton improvement and the Penn survey on another side—a black-oak being a common corner of these two old surveys. To get upon the Isaac Kerr survey, Hamilton, or those claiming under him, must cross one of these old surveys, and the line of the Stone survey to be crossed is not an imaginary or plotted line, but a line run upon the ground in 1794.

The Hamilton improvement was therefore cut in two, and he

could not hold both: Smith *v.* Beck, 1 Casey 108; McLaughlin *v.* Maybury, 4 Yeates 537.

As to the 7th error. If a verdict is recorded and a jury dismissed, it cannot be recalled; but until that is done it is within the discretion of the court to send the jury back to consider and correct mistakes, and unless in a flagrant exercise of it, it is not reviewable: Reitenbaugh *v.* Ludwick, 7 Casey 141.

The opinion of the court was delivered by

AGNEW, J.—The 1st assignment of error is answered by the 10th section of the Intestate Act of 8th April 1833, which vests title in the widow for such estate as the intestate had, in default of known heirs or kindred competent to inherit the real estate under that act. According to the testimony of William Carpenter, William Glenn died without known heirs or kindred except his mother, who was survived by the widow. His property did not then escheat, but went to the widow, who joined in the deed of September 7th 1860.

The 2d assignment of error is also without foundation. There is no evidence that John Hamilton had an actual possession within the lines of the Isaac Kerr survey, while his own warrant was not taken out and surveyed until the year 1847. His actual possession of 1820 was confined to a different part of his claim. He had no title or possession, therefore, before the date of the patent to John R. Coates for the Isaac Kerr tract, which was granted in 1831, and on this state of facts the patent was competent evidence of the title from the warrantee: Downing *v.* Gallagher, 2 S. & R. 455; Read *v.* Thompson, 5 Barr 328–9; Balliot *v.* Bauman, 5 W. & S. 150; Steiner *v.* Coxe, 4 Barr 28–29.

The question of costs did not belong to the jury, but must be determined by the court after the verdict was passed. The 3d assignment of error is therefore without foundation.

There was no evidence to justify the call for the instruction requested in the defendants' 2d point. Without an actual possession within the lines of the Isaac Kerr survey, the marking of lines could give no title by the Statute of Limitations. A presumptive possession does not exist in favor of a junior against a senior title. The contrary is the presumption of law which gives the possession to the owner of the title until he is disseised by an actual ouster. This has been settled by the two cases of Hole *v.* Rittenhouse, 1 Casey 491, and 1 Wright 116; and O'Hara *v.* Richardson, 10 Wright 390. The case of Ament's Ex'rs. *v.* Wolf, 9 Casey 331, on its facts, is in accord with these cases. There are some expressions in the opinion in defining what is actual possession by user of the woodland, which might seem to convert acts of mere trespass into an actual possession; but which when applied to the facts in the mind of the judge do not justify this conclu-

[Broad Top Coal Co. *v.* Riddlesburg Coal Co.]

sion. In that case the junior warrant holder .cleared a field of about five acres within the interference, and had had possession of that and an uninterrupted-use of the rest of the interference, as woodland adjacent to farms is commonly enjoyed, for twenty-one years before suit brought.

The radical error of the 3d and 4th points of the defendant is, that John Hamilton had no title whatever to the land within the Isaac Kerr warrant and survey, and therefore had nothing to which the patent to Coates could attach for his benefit. The patentee is a trustee only when there is a better owner of the land from the Commonwealth. Hamilton's improvement was cut off from the Isaac Kerr tract by the lines of the warrants and surveys of Benjamin Penn and John Stone, which cornered together. A settler or improver can obtain no title to appropriated land, or take up disconnected vacancies severed by intervening appropriated land, or hold adjoining vacant land by settlement on appropriated land: Overton *v.* Gibson, 2 Watts 384; Adams *v.* Jackson, 4 W. & S. 55; Smith *v.* Beck, 1 Casey 106; Lineweaver *v.* Crawford, 2 Id. 417. This grows out of the definition of a settlement of which residence is the chief and essential element. Cultivation also is a necessary ingredient: Act 30th December 1786, § 2; 2 Smith's Laws 395; Act 22d September 1794, 3 Smith's Laws 393; Gardinier *v.* Marcy, 5 Watts 337; Goodman *v.* Losey, 3 W. & S. 530. Having neither a residence of his own nor that of a tenant on the Isaac Kerr survey, there was nothing by which Hamilton could acquire title for himself, by his settlement on the land cut off by the Penn and Stone tracts, or by which he could claim the benefit of the Coates patent.

There seems to be nothing on the record that will sustain the 7th assignment of error. By the bill of exceptions it appears that the first verdict was not recorded when the judge arrested the proceeding and sent the jury back to reconsider their verdict as to the Hamilton tract, on the ground that the verdict they were about to render was contrary to the charge of the court. In the absence of any improper influence to compel the giving of a verdict in a certain way, it is not error to send a jury back to reconsider a verdict about to be rendered against the charge of· the court. Indeed it is more judicious to call the attention of the jury to the error they are about to commit in finding contrary to express instruction, than to receive a verdict which must be set aside, and cause the parties the delay and expense of another trial. Finding no error in the record; the judgment is affirmed.