Washburn et al. v. Cutter.

# WILLIAM D. WASHBURN, *et al.*

## *vs.*

## AMMI CUTTER.

A void tax deed is admissible to show claim of title followed by proof of adverse possession of land.

Replevin will lie for things which have formed part of the realty, if they have been taken away after severance from the freehold. But in order to maintain such action the plaintiff must have had the actual or constructive possession of the land, and as the title to land cannot be tried *ex directo* in replevin, if the series of acts, in which the severance and taking away has occurred, are sufficient to create adverse possession of the land in the defendant, replevin cannot be maintained.

The owner in fee of wild land has the constructive possession thereof unless there be an adverse possession.

What state of facts will constitute an ouster and adverse possession, is a question of law; but the existence of facts, amounting to such ouster and adverse possession in law, is a question for the jury.

What is adverse possession considered.

The following facts were found by a special verdict of the jury, viz. : that the land comprising the *locus in quo* was unoccupied and wild up to the time the defendant commenced cutting thereon the logs for which replevin was brought; that a quit-claim deed was executed by one Pratt, (who had a void tax deed for the premises,) to Cutter & Co., (defendant being a member of said firm;) that defendant cut upon the land within the time referred to in the pleadings, viz.: from the 31st of December, 1868, to and including the spring of 1869, 171,000 feet of logs. *Held,* that these facts are not in law sufficient to constitute adverse possession of the land in the defendant, the plaintiffs being the real owners thereof.

The effect of color of title, when an entry is made and possession taken and held in accordance with it, is to define the extent of the possession claimed;

but the entry and possession must be proved by acts sufficient in law to constitute such adverse entry and possession.

The mere cutting of timber without actual occupancy or cultivation, or inclosure of the land or some part of it, when it is adapted to and capable of such improvement, will not constitute adverse possession, but will be a mere trespass.

This is an appeal by the plaintiffs from an order of the district court for Hennepin county, refusing a new trial  The case is fully stated in the opinion of the court.

CORNELL & BRADLEY, for Appellants.

BEEBE & SHAW, for Respondent.

*By the Court.*—McMILLAN, J.—This action, as originally instituted by the plaintiffs, was an action for the wrongful taking and detention of certain personal property, to-wit: certain logs by the defendant.   The complaint alleges title in fee simple in the plaintiffs, for more than a year prior to the date of the complaint, June 11, 1869, to certain lands therein described, according to the survey thereof by the government of the United States; that during the winter and spring of 1868, and 1869, the defendant entered upon the lands, and wrongfully and unlawfully cut, hauled and took away one hundred and seventy-nine pine trees, which were then and there standing and being on said lands, amounting to 177,230 feet, and marked the logs made from said trees with his private mark, and that he still wrongfully and unlawfully detains the same; that the plaintiffs are the owners of said property, and are entitled to the immediate possession thereof; that the plaintiffs prior to the commencement of this action demanded of the defendant the possession and delivery of said property, which was refused; that the said logs are of the value of six

teen hundred dollars; and demands judgment for the delivery and possession of said property, or for the sum of sixteen hundred dollars, damages for the detention thereof.

The answer of the defendant denies each allegation of the complaint except as therein afterwards admitted, and admits that, during the winter and spring of 1869, to-wit: from and after the 1st of January, 1869, the defendant entered upon the land described in the complaint, and cut and hauled away therefrom one hundred pine trees and no more, amounting to one hundred thousand feet of logs and no more, which were of the value of three hundred dollars, and no more; but denies that he wrongfully or unlawfully cut or carried away said trees or logs, or any trees or logs, from said land or elsewhere.

The answer further alleges that, on the 28th of June, 1864, one Elias Pratt became the owner in fee simple of all said land in the complaint described, under and by virtue of a tax deed duly executed, acknowledged and delivered, on said last mentioned day, by the auditor of said county of Mille Lacs to said Pratt; that Pratt took possession of the land under the tax deed, and continued to be the owner and in the actual possession of the whole of the same from the time last mentioned until the 30th of May, 1865, when he sold and conveyed one undivided half part of the same to F. M. Stowell & Co.; and continued to be the owner of the other undivided half part of said land, and in possession of the whole of the same, from the 28th of June, 1864, to the 31st of December, 1868, when Pratt and his wife sold and conveyed, by quit-claim deed duly executed, acknowledged and delivered, to the firm of Cutter & Co., the last mentioned undivided half of said land. That said Cutter & Co. became and have ever since continued to be and still are the owners in fee simple of one undivided half part of said described land, and have, ever since said 31st of December, 1868, been and still are in the lawful and actual

possession of said land. That defendant is a member of the said firm of Cutter & Co., and that he entered upon said land, and cut and carried away said trees and logs, as aforesaid, under and by virtue of the title, ownership and possession of said land in and by said Cutter & Co., and not otherwise, &c.

The cause was tried by jury in the court below. Upon the trial plaintiffs offered to prove the title to the land described in the complaint, and from which it is alleged the logs in controversy were cut; to which the defendant objected, on the ground that title to land cannot be tried in replevin. The evidence was received by the court, and defendant excepted to the decision.

On the part of the defence defendant offered in evidence a tax deed of the land named in the complaint, (the deed of Pratt mentioned in the answer,) to which the plaintiffs objected as immaterial and irrelevant, and that the allegations in the answer are insufficient to admit proof of tax title. The objection was overruled and the plaintiffs excepted.

The court ordered a special verdict, which was rendered as follows: " We, the jury, find the plaintiffs entitled to recover in this action, and find specially as follows in answer to the following specific questions:

1. Did the plaintiffs have record title of, and the right to the possession of the land in question, as alleged in the complaint?

Answer—yes.

2. Was the said land unoccupied and wild up to the time defendant commenced cutting said logs thereon, mentioned in the pleadings? Answer—yes.

3. How many thousand feet of logs were cut by defendant thereon within the time referred to in the pleadings? Answer—171,000 feet.

Washburn et al. v. Cutter.

4. What was the value of said amount of logs so cut, as standing trees on said land ?   Answer—$2.50 per thousand.

5. What were they worth, cut into logs on the land ? Answer—$3.00 per thousand.

6. Was there a demand upon defendant made on behalf of plaintiffs for the delivery of possession of said logs to them, before suit brought, and ·at about what time ?   Answer—yes, about the month of June, 1869.

7. Did defendant refuse to deliver such possession upon such demand ?   Answer—yes.

8. Where were such logs at the time of such demand and refusal ?   Answer—in Rum river boom in Anoka county.

9. What was the value of said amount of logs at the time of said demand, and at the time of the commencement of this action ?   Answer—$7 per thousand.

10. Was there a tax deed of said land executed to said Pratt, as described in the answer herein, and were there executed and delivered the quit-claim deeds by said Pratt, as set forth in said answer ?   Answer—yes.

11. Were the taxes on said land, for which said tax deed purports to have issued, actually paid before forfeiture and sale, and had the treasurer's receipt for the amount of said tax been issued and delivered to plaintiffs, or one of them, before the forfeiture and sale, upon which said tax deed was issued ? Answer—yes.

12. In connexion with the 8th question and answer, the jury will also answer whether, at the time of the commencement of this action, the said logs so cut on plaintiffs' land were separate, or intermingled and confused with other logs of a similar mark of defendant, so that the same could not be separately identified ?   Answer—they were mixed. ·

The plaintiffs moved for judgment on the verdict.   The order of the court is not contained in the paper-book, but from

the decision of the court which is before us, it would seem that the court denied the judgment for a return of the property, or the value thereof, as in replevin, and ordered judgment for the plaintiffs for four hundred and seventy-seven dollars and fifty cents, damages, with interest at seven per cent. since the commencement of the action, and that the complaint be amended to conform to the facts found and proved.

The plaintiffs, upon the bill of exceptions settled and allowed by the judge, the pleadings, verdict, and order of the court for judgment, moved for a new trial, which was denied, and from the order denying a new trial the plaintiffs appealed.

On the trial of the cause the defendant offered in evidence a tax deed of the land named in the complaint, a copy of which is attached to the bill of exceptions. The plaintiffs objected to the evidence on the ground that it is immaterial and irrelevant, and that the allegations in the answer are insufficient to admit proof of tax title. The objection was overruled, and plaintiffs excepted.

There were two theories relied on by the defence, 1st, title in fee to the premises under a tax deed to one Pratt, and conveyances from him to F. M. Stowell & Co. and to Cutter & Co.; 2d, adverse possession of the premises in Cutter & Co. under claim of title, at the time the alleged grievances were committed.

It appears that the tax deed was void and no title passed under it, and as the defence of title is abandoned, we need not consider whether the deed was admissible or not to show title. But, although void, it was admissible to show claim of title, followed by proof of adverse possession. *Wright vs. Mattison,* 18 *Howard* 50, *and authorities cited.* The exception therefore is not well taken.

The remaining and important question for determination in the case is, whether, upon the facts found by the special ver-

dict, the plaintiffs can maintain the action of replevin, and were entitled to a judgment for a return of the property claimed, &c.

Replevin will lie for things which have formed part of the realty, if they have been taken away after severance from the freehold. But, in order to maintain such action, the plaintiff must have had the actual or constructive possession of the land; and as the title to land cannot be tried, *ex directo*, in replevin, if the series of acts, in which the severance and taking away has occurred, are sufficient to create an adverse possession in the defendant, replevin cannot be maintained. 1 *Smith's Lea. Cases*, 6*th Am. ed*, 604; *Riley vs. Boston Water Power Co.*, 11 *Cush*. 11; *Cook vs. Babcock, Ib.* 206 ; *Wright vs. Guier*, 9 *Watts* 172; *Moody vs. Whitney*, 34 *Maine* 563 ; *Mooers vs. Wait*, 3 *Wend.* 104; *Elliot vs. Powell*, 10 *Watts* 454.

The weight of authority in our country settles the principle, that the owner in fee of wild land has the constructive possession thereof, unless there be an adverse possession. *Jackson ex. dem. Woodruff vs. Gilchrist*, 15 *Johns.* 88; *Miller and others vs. Shaw*, 7*th S. & R.* 141, *per Duncan J.; Wright vs. Guier*, 9 *Watts* 172;. *Cornelius & Empson vs. Giberson*, 1 *Dutch.* 1; *Green vs. Liter and others*, 8 *Cranch* 245; *Proprietors of Kennebec Purchase vs. Call*, 1 *Mass.* 482: see also *Van Brunt vs. Schenck*, 11 *Johns.* 377, *per Spencer J.*

In the case at bar it is found by the special verdict, that the plaintiffs, at the time the trees in question were severed from the freehold and demanded of the defendant, were the owners in fee of the premises, and that, up to the time of the entry of the defendant upon the land, it was unoccupied and wild land; unless, therefore, the entry of the defendant and the acts done by him constituted an adverse possession by him of the premises, the plaintiffs were in the constructive possession of the land, and, by virtue thereof, had the constructive posses-

sion of the trees or logs after their severance from the freehold, and can maintain the action of *replevin* for the trees or logs taken against the defendant as a wrongdoer.

In order to constitute adverse possession as against the real owner, it must be such a possession as would, if continued for the period required by the statute of limitations, ripen into a perfect title, and constitute a bar to the assertion of a legal title by the owner. The possession "must be actual, visible, notorious, distinct and hostile." *Hawk vs. Senseman,* 6 *S. & R.* 21; *Washburn on Real Property,* (3d Ed.,) *vol.* 3, *p.* 122.

A party claiming by disseizin, as against the legal owner, "must show an actual, open, exclusive and adverse possession of the land. All these elements are essential to be proved, and the failure to establish any one of them is fatal to the validity of the claim. In weighing and applying the evidence in support of such a title, the acts of the wrongdoer are to be construed strictly, and the true owner is not to be barred of his right except upon clear proof of actual occupancy, clear definite, positive, and notorious." *Cook vs. Babcock,* 11 *Cush.* 209–10, *and authorities cited.*

Such adverse possession must amount to a disseizin of the real owner. "There must be an actual entry upon the land, with palpable intention to claim the possession as his own, by the adverse claimant," and this claim of possession "must be not the assertion of a previously existing right to the land but the assuming of a right to the land from that time, and a subsequent holding with assertion of right. This intention to claim and possess the land is *one* of the qualities indispensable to constitute a disseizin, as distinguished from a trespass." 2 *Smith's Leading Cases,* (6 *Am. Ed.*) 637; 3 *Washburn on Real Property,* 122, 123; *Ewing vs. Burnett,* 11 *Pet.* 41; *Miller et al. vs. Shaw,* 7 *S. & R.* 129.

What state of facts will constitute an ouster and adverse

possession, is a question of law; but the existence of facts, amounting to an ouster and adverse possession in law, is a question for the jury. *Bradstreet vs. Huntington,* 5 *Pet.* 402; *Gill and Simpson vs. Fauntleroy's heirs,* 8 *B. Munroe* 177; *Ewing vs. Burnett,* 11 *Pet.* 41; 3 *Washburn on Real Property,* (3d Ed.) 127; 2 *Smith's Leading Cases,* (6th Am. Ed.) 643.

We are, therefore, to determine, whether the facts found by the special verdict constitute ouster and adverse possession by the defendant in this case.

The only facts found by the jury, tending to show adverse possession of the land by the defendant, are, that the land comprising the *locus in quo* was unoccupied and wild up to the time the defendant commenced cutting the logs thereon; that a quit-claim deed for the undivided half of the land was executed by Pratt to Cutter & Co.; that the defendant cut upon the land within the time referred to in the pleadings, viz.: from the 31st of December, 1868, to and including the spring of 1869, 171,000 feet of logs.

The effect of color of title, when an entry is made and possession taken and held in accordance with it, is to define the extent of the possession claimed; but the entry and possession must be proved by acts sufficient in law to constitute such adverse entry and possession. *Cornelius and Empson vs. Giberson,* 1 *Dutch.* 1. 36; 3 *Washburn on Real Property,* 136.

" So much depends on the situation and nature of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it, that it is difficult to lay down any precise rule adapted to all cases." *Ewing vs. Burnett,* 11 *Pet.* 41.

If the land is not susceptible of any permanent useful improvement, actual occupancy, cultivation or residence may not be neccesary in order to constitute adverse possession. *Ewing vs. Burnett. Ib.* But if the land will admit of such improve-

ment, the possessory acts must be such as to show permanent possession for the purpose of such improvement; for instance, actual occupancy and cultivation or enclosure; and this whether the adverse possession is relied on to raise the bar of the statute of limitations, or to bar an action of trespass or trover. *Wright vs. Guier*, 9 *Watts*, 172; *Johnston vs. Irwin*, 3 *S. & R.* 291; *Cornelius and Empson v. Giberson*, 1. *Dutch.* 1.

The mere cutting of timber, without actual occupancy or cultivation or inclosure of the land, or some part of it, when it is adapted to and capable of such improvement, will not constitute adverse possession, but will be a mere trespass. *Cornelius and Empson vs. Giberson*, 1 *Dutch.* 1.

The only act of possession on the part of the defendant, found by the verdict in this case, is the cutting of the trees. The verdict is entirely silent as to the character and nature of the land, except that it is wild and uncultivated; whether it is capable of cultivation and improvement does not appear; there is no finding as to whether the cutting of the trees upon the land was for the purpose of occupancy and improvement of the land, or merely for the purpose of stripping it of the timber. Nor do the jury find that the entry of the defendant upon the land, and his cutting the trees thereon, were with the intention of claiming and possessing the land, either for himself, for Cutter & Co., or any other person. The action is against the defendant individually, and it is admitted in the pleadings that the defendant cut the logs and converted them to his own use. It is found by the jury that, up to the time of his cutting the logs, the land was wild and uncultivated. Cutter & Co., therefore, could not have been in the possession of the land at the time the defendant commenced cutting the trees thereon, and, their deed being void, they had no right of possession. Assuming it to appear that the defendant was a member of the firm of Cutter & Co., yet his entry upon the

land and cutting the trees appear to have been done in his individual right, and for his personal benefit, and, although with permission of Cutter & Co., were not done with the intention of taking or claiming possession of the land for them; and there is no pretence that by these acts he intended to claim possession for himself, or to retain possession of the land individually, except for a temporary purpose, that is, cutting the logs he did cut.

We are therefore of opinion that the facts found by the special verdict of the jury do not in law constitute adverse possession of the *locus in quo.*

There was, therefore, no person in the adverse possession of the premises, and the plaintiffs were the owners in fee thereof, and constructively in possession of the same.

The defendant must, therefore, be regarded as a mere trespasser; and the plaintiffs, in the absence of any other reason preventing it, are entitled to maintain replevin for the logs taken and detained by him.

This is the only question discussed or raised upon this appeal, and the only one, therefore, which we are called upon to consider.

Whether there is any other objection to prevent the judgment claimed by the plaintiffs in their complaint, it is not for us now to consider, since it appears that the order of the court below for judgment was made solely on the ground above considered, and we are asked to consider it only.

The relief asked for by the plaintiffs upon this appeal, is a reversal of the order denying a new trial, from which they appeal.

The order denying a new trial is reversed and a new trial ordered.