R. C. LAKE ET AL. v. C. H. EARNEST.

Decided February 5, 1909.

**1.—Deed—Registration—Certification of Acknowledgment—Official Designation of Officer.**

Where the certificate of acknowledgment to a deed was in due form and was attested by an official seal on which was the name, residence and official designation of the officer, the deed was properly admitted to record although the certificate was signed by the officer without any designation of his official capacity.

**2.—Limitation—Boundary—Evidence.**

Where, in trespass to try title, the defendant claimed under the three and five years statute of limitation, but the record on appeal failed to show with certainty the boundary to which the defendant claimed, or when exclusive possession was taken by him, or the use to which the land was put, or the character of his possession, the finding of the trial court upon the issue of limitation will not be disturbed.   Evidence of defendant's adverse possession as contained in the record considered, and held lacking in that degree of certainty which requires an Appellate Court to disturb the judgment of the trial court.

Appeal from the District Court of Lubbock County.   Tried below before Hon. L. S. Kinder.

*Geo. L. Beaty* and *H. C. Ferguson* (*Stephens & Miller* of counsel on appeal), for appellants.

*C. H. Earnest* and *W. D. Benson,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee instituted this suit on the 21st day of July, 1904, in the usual form of trespass to try title, to recover a survey of land situated partly in the county of Lubbock and partly in the county of Hockley, described in the amended petition as follows, to wit: "640 acres known as survey No. 61, in block 20, originally granted to the Houston, East & West Texas Railway Co. by virtue of certificate No. 658 and patented to Stephen S. Charles, May 10, 1880, by patent No. 11, vol. 58. Beginning at an earth mound and 4 pits the S. W. corner of survey No. 62 and the N. E. corner of survey No. 50, same block, thence north 1900 vrs. mound and four pits, the N. W. corner of said survey No. 62; thence west 864 vrs., cross the east fence of the Nunn or Elwood pasture, 1900 vrs., mound and four pits; thence south 1900 vrs., mound and four pits, the N. W. corner of said survey No. 50 in said block 20; thence east 996 3-10 vrs., recross the east fence of the Nunn or Elwood pasture, 1900 vrs. to the place of beginning, holding said land in fee simple."

Appellants answered disclaiming as to all of the land described in the plaintiff's petition except 335½ acres out of the west part thereof, alleged to be a part of Donley County school league No. 10, as to which they pleaded not guilty, and the statutes of three and five years limitation.

The case was tried by the court without a jury and judgment rendered against appellants on their disclaimer as to the land described in appellee's petition not in conflict with the Donley County school land, and upon the evidence as to the 335½ acres off of the west part of said section 61 claimed by appellants as part of said league.

Survey 61, block 20, described in appellee's petition, is older and superior in point of location to the Donley County league No. 10 claimed by appellants, and it is admitted that plaintiff has title to the land in controversy from the sovereignty of the soil down to one Annie Evarts Fobes. Survey 61 was duly patented May 10, 1880, and the transfers from the grantee therein to said Annie Evarts Fobes are regular, duly authenticated and properly recorded. Annie Evarts Fobes and her husband, S. D. Fobes, on the 27th day of November, 1901, executed and delivered to appellee a good and sufficient conveyance to said section 61, which conveyance was first recorded December 11, 1901, and re-recorded March 24, 1902. The sufficiency of the conveyance from Annie Evarts Fobes and husband to appellee is not questioned, except that it is insisted the acknowledgment is defective. The acknowledgment is in due form, but is thus attested: "Given under my hand and seal of office this 27th day of November, A. D. 1901. (Signed) Joseph H. Long." On the impress of the seal attached to said deed appears the following words: "Joseph H. Long, Notary Public, Cook County, Ill." At the time the deed was recorded the second time the certificate of acknowledgment was the same as before, with the

additional words following the name of Joseph H. Long, "Notary Public, Cook County, Illinois," with the seal referred to attached.

The patent from the State of Texas to Donley County for said league No. 10, issued on the 15th day of December, 1883, and it is admitted that the title passed from Donley County to Gregory, Cooley and Hastings by a regular chain of transfers, the last of which were duly filed for record October 29, 1891. Gregory and Cooley died, and L. R. Hastings and all of the heirs and legal representatives of Gregory and Cooley, deceased, conveyed to appellants R. C. Lake and T. B. Tombe said league No. 10, Donley County school land, by deeds duly acknowledged, all of which were dated as of August, 1899, except the deed of one Pearson, an heir of Gregory, which was dated as of December 24, 1901, and which conveyed an undivided 1-72 interest in an undivided 1-3 interest in said land, and all of said deeds were duly filed and recorded in the office of the county clerk of Lubbock County January 30, 1902. It is admitted that all taxes have been paid on league No. 10 for the years 1898 to 1906 inclusive, but by whom paid does not appear.

In view of the earnestness and ability with which this case has been presented in behalf of appellants, we make the following further statement of and extracts from evidence deemed by us to be all that is pertinent to the conclusion we have reached:

One J. D. Wood testified in behalf of appellants that between the 18th and 25th day of May, 1897, he completed the construction of a fence he was building for Mr. Q. Bone that separated the Bone and Nunn pastures. He says: "I built a line of fence running south thirteen miles to the south Nunn fence and tied on there." It is agreed "that when Jeff Woods built the thirteen miles of fence testified about by him, that it closed the Nunn pasture, and that league No. 10, Donley County school land, was in the Nunn pasture."

George L. Beatty testified among other things: "I state positively that Gregory and Hastings and Lake and Tombe were in peaceful and adverse, hostile and open possession of this land up to the time this suit was filed, from the time the gap was closed that Mr. Wood testifies about."

Mr. Standerfer, the surveyor of the Lubbock Land District, testified that he made a survey of the Donley County school land league No. 10, October 13, 1906. He refers to certain field notes and plat attached to appellants' answer as showing a conflict and the amount of such conflict between said league and the land described in appellee's petition. The plat indicates that the surveyor found the original northwest and southwest corners of the Donley County league, but no others, and the field notes referred to are not the field notes of the Donley County league, but those of the survey made by the witness showing the conflict between the league and survey 61 as found by him. This witness further testified that: "The first time I surveyed section 61 and Donley County school land was two or three years ago, and then I resurveyed them last fall. When I was out there in 1902 I found this fence up near the east line of Donley County school league No. 10. I saw no one there. I did not see any one there in possession. The second time I was out there I saw no one in possession—just saw

the fence. I was there in 1901 before the fence was placed there. I did not find any one there in possession; it was in the open prairie. There was no fence there in 1901. It was fenced in the summer of 1902. This land was enclosed in what was known as the Nunn pasture. Lake, Tombe Cattle Co. claimed to own it. Mr. Copeland and several others were then living in the Nunn pasture, having taken up land there. A part of survey 61 is in the Frost pasture. The fences have not been changed since they were originally put up—not in that particular place. Frost fenced off his pasture in 1902, enclosing part of section 61. Section 61 was in the Lake, Tombe Cattle Co. pasture in 1901."

We set out in full the testimony of Mr. Montgomery, the only remaining witness: "I live near the line of Lubbock and Hockley County. I have lived there six years the 10th of last June. I was there in June, 1901. I don't know that I know where 61, block 20, is. I know where Donley County leagues are but I don't know them by number. When I went there there was no fence running south near the east line of the Donley County league. There was no one on section 61 nor in possession when I went there. I saw no one in possession of it in any way. If there had been any one living there I would have seen them. I know where Frost's improved section was. I know where his land was extended out between Hockley and Lubbock Counties. There was no one south and west of him when I went there—no one living there. That fence running south was built there in the fall of 1902. There was no one living there at the time this fence was built—no one farming it. It was in what was supposed to be the Nunn pasture. There was no improvements on section 61. I have seen this land since that fence was extended south, and I have helped survey it. There was no one in possession, using, farming or cultivating it in any way. I think Mr. Frost fenced in his pasture after he came in there. I think it was in 1902, after the other fence was put up. I don't think Mr. Frost was using this land in connection with his other land. He closed up his fence there after this fence was built in 1902, running south from my place. He came in then on the south of his place and joined somewhere and closed up his pasture. There was no one living on this land in conflict then—no farm there—and it was not closed by itself. I have seen no one there asserting any right to it. Part of it is now in the Frost pasture. The fences have never been changed since they were originally put up. The people that owned section 50 put up their fence, and there was a line drawn from the northeast quarter over a mile, including 49. They fenced the Frost pasture off in 1902. It was in 1901 that Mr. Frost went in there instead of 1902."

On cross-examination this witness testified: "In 1901, when I came there six years ago, there was no fence there at all. The fence enclosing the Donley County land was put there in 1902. There was no fence there at all before that. I was first out there in July, 1901. My place is north and east of Donley County school land. I am north of block 20. Directly east of the Donley County land is what we called the Frost pasture. This land was not enclosed in 1901. In coming from the Nunn ranch to Lubbock you come out of the Nunn pasture right close to where Frost's place is. At the time Mr. Frost settled

there there was a fence a good ways east of him. It was the Duce Hart's place. When Mr. Frost first settled there I understood he settled in the Nunn pasture. The Nunn fence was some three or four miles east of Mr. Frost's place. Mr. Frost is east of the league land. The fence is still east of Mr. Frost's place. The fence divided the Nunn and Duce Hart pastures."

The transcript fails to show that appellants offered in evidence the patent or any field notes of Donley County school league No. 10, or any transfer, conveyance, or other evidence showing the calls of the Donley County league. Nor does the evidence show the extent of the Nunn pasture, nor, save as indicated by the testimony we have given, when it was entirely closed, or the use to which it was put, or the character of appellants' possession, if any.

The first two assignments of error question the findings of fact upon the part of the court, but there are no specific findings to be found in the record, the judgment being a general one. We hence can not consider the assignments referred to except in so far as the questions suggested are involved in other assignments. In reality but two questions are presented that appear to be material, and both of them we think must be determined adversely to appellant's contention.

The first question is presented in appellant's contention that the deed of Annie Evarts Fobes and husband to C. H. Earnest was void in that the certificate of the officer taking the deed failed to show that he was legally authorized so to do. The certificate, however, as we have stated, appears to have been in due form and to have been signed by Joseph H. Long, attested by a seal giving his official designation as notary public of Cook County, Illinois, which we think sufficient to authorize the record of the deed. Besides, the defect made the ground of appellants' claim seems afterwards to have been corrected by the insertion of the officer's official designation in the blank following his name. See Broussard v. Dull, 3 Texas Civ. App., 59; Linslie v. Kerr, 34 S. W., 765; Chamberlain v. Pybas, 81 Texas, 511.

The remaining material question, and indeed the only one upon which appellants insisted on the oral submission of this case, is whether appellants showed themselves entitled to recover under the three and five years statute of limitation. We have repeatedly and carefully scrutinized the evidence with a view of determining these questions, but feel unable to disturb the solution made of them by the court below. If the case be treated as one of a junior survey overlapping an older, and assuming for the purposes of the argument that appellants had possession of at least a part of the junior, then it is not clear to all of us that the evidence shows that appellants held possession under any conveyance that by its calls included the land in controversy. It can not be contended, save perhaps from Beatty's testimony, that appellants ever had any actual possession of the land in controversy, and it is formally admitted that appellee has title to the land in question from the sovereignty of the soil down to Annie Evarts Fobes, and the deed from said Annie Evarts Fobes and husband to appellee undoubtedly conveyed that title to him, so that in order for appellants to show right of recovery under either the three or five years statute of limita-

tion it is necessary for them to show that their adverse possession, if any, was held under a deed or deeds that embraced the land in. controversy within their calls. See Bean v. Whitney, 25 Texas Civ. App., 73; Runkle v. Smith, 52 Texas Civ. App., 186. Admitting that appellants used reasonable diligence, as they insist under one of their assignments, to secure the record of the deeds under which they claim, it nowhere seems to conclusively appear that any conveyance under which they claim embraces by its specific calls the land in question. No deed or field notes so showing appears in the evidence. All that the present record shows save by inference is that appellants claim the Donley County school land without showing where its east line was actually fixed upon the ground, or that the patent to Donley County or the conveyances under which they claim actually call for the line as insisted by them.

But if this be too strongly stated, and if, as is perhaps to be implied from the testimony of Standerfer, the calls of appellants' conveyance fix the east line of the Donley County league east of the true line of appellee's older survey, and thus show an undisputed conflict of calls, the evidence yet leaves some uncertainty, as at least some of us are inclined to·think, as to when appellants' adverse possession, if any, began. Accepting for the moment Beatty's testimony, appellants' possession was "from the time the gap was closed that Mr. Wood testifies about up to the time this suit was filed." While the witness Wood places the time of building the fence which closed the Nunn pasture in May, 1897, Standerfer says that when he was there in 1901, "before the fence was placed there," he found no one in possession, and that it (the land in controversy) was "in the open prairie;" that "there was no fence in 1901; it was fenced in the summer of 1902." It certainly can not be said to be clear from this witness's testimony that he was testifying in relation to a fence other than the one built by Wood. The witness Montgomery testified that "the fence enclosing the Donley County land was put there in 1902; there was no fence there at all before that." It is true that this witness in his testimony also refers to a fence several miles east of the one about which he testifies, and probably we should infer that such other fence is the one built by Wood, but if so, it can at least be said that the evidence is not very satisfactory in the respect we are now discussing. If, in fact, Donley County league was in the open prairie in an unenclosed pasture as late as the summer of 1902, it could hardly be seriously contended under the facts of this case that appellants' adverse possession, if any, was such as to give them title under the three or five years statute of limitation.

But aside from the foregoing suggestions, we all agree that the evidence as a whole on the issue of appellants' adverse possession is not of that degree of certainty which requires us to disturb the trial court's judgment. One claiming adverse possession under a junior title overlapping an older survey must show an actual and visible appropriation of at least some part of the junior survey. See Revised Statutes, article 3349; Parker v. Baines, 65 Texas, 605; White v. Burnley, 61 U. S., 235 (15 Law Ed.), 886; Smith v. Ingram, 29 N. C., 175; Broad Top Coal & Iron Co. v. Riddlesburg Coal & Iron Co.,

65 Pa., 435; Peyton v. Barton, 53 Texas, 298; Roach v. Fletcher, 11 Texas Civ. App., 225; Smith v. Lee, 41 Tenn., 549; Turney v. Chamberlain, 15 Ill., 271; Washburn v. Cutter, 17 Minn., 361; The Proprietors of the Kennebeck Purchase v. Springer, 4 Mass., 416; Hole v. Rittenhouse, 25 Pa. St., 491. Except as may be implied from the record that appellants own the "Nunn pasture;" that Donley County league No. 10 was in that pasture, and Beatty's statement that we have quoted, there is nothing whatever in the record of this case showing that appellants, or any one for them, ever occupied or were even upon the land in controversy or Donley County league No. 10. It is nowhere shown that an animal of any kind ever pastured thereon, or that any visible use or occupancy of any kind or character was ever made of said league. In other words, appellants had "no flag flying" so as to give notice to any one of their possession. How, then, can it be said their possession was actual? The trial court heard the witness Beatty when he testified. His testimony at best was a legal conclusion, its credibility and weight was for the trial court, and, as stated, we regard the testimony as a whole altogether too inconclusive to require us to reverse the judgment of the trial court and to here render it in behalf of appellants, and thus give to them land that it is conceded appellee in fact truly owns. Judgment affirmed.

*Affirmed.*

Writ of error refused.