UNITED SOCIETY, CALLED SHAKERS, *vs.* FRANK A. BROOKS.

Berkshire.    Sept. 27, 1887. — Jan. 3, 1888.    C. ALLEN & HOLMES, JJ., absent.

A., the owner of land with growing trees upon it, entered into a contract, under seal, with B., which stated that A. "agrees to sell," and B. "agrees to buy" all the hemlock bark, and all the hemlock and spruce timber standing on the land. B. agreed to cut and remove the same within four years, to cut and remove a certain amount each year, and to pay certain prices per cord for the bark, and per thousand feet for the timber. It was further agreed that all the trees that were down, or that should thereafter fall, should be cut and paid for by B. The contract provided for measurements to be made by A. on notice to B., and for notice to A. by B. when a sufficient quantity was ready for measurement. *Held*, that the contract was an executory agreement for the sale of timber and bark; that the property in the trees did not pass to B. until they were cut; and that, on B.'s not fulfilling his contract, A. was entitled to recover only such damages as he had sustained on the basis that the timber and bark remained his property until severed from the soil.

CONTRACT, for breach of the following instrument, under seal, executed by the parties in the presence of one witness :

" This agreement, made this twenty-seventh day of December, A. D. 1879, by and between the United Society, called Shakers, of Pittsfield and Hancock in said county of Berkshire, and Franklin A. Brooks of North Adams in said county of Berkshire, witnesseth : That the said United Society agrees to sell and Brooks agrees to buy all the hemlock bark and all the hemlock and spruce timber now standing, growing, and being on the land owned by said United Society, and situate in Stamford in the State of Vermont, and known as the ' Mountain lot,' containing about four hundred acres of land. And said Brooks agrees to purchase, take, cut, and remove all the hemlock timber and hemlock bark from said Mountain lot within four years from this date, and also all the spruce timber within five years from this date, and agrees to pay for the same the following sums or prices, viz.: all hemlock bark the sum or price of two and 25-100 dollars per cord, all hemlock lumber at one dollar and twelve and one half cents per thousand feet, and all spruce timber two and 75-100 dollars per thousand feet. All hemlock bark in each and every year cut and peeled shall be paid for on or before September first in each and every year. And all hemlock and spruce timber cut in each and every year shall be paid for respectively on the first days of June and December in each and every year, all payments to be made at the office of said United Society in said Pittsfield. Said Brooks shall cut, peel, and pay for not less than one hundred and fifty cords of hemlock bark in each and every year until the end of the term, or until all the hemlock bark is cut, peeled, and removed from said Mountain lot, and said Brooks shall also cut, remove, and pay for at least one fifth part of all the spruce timber on said Mountain lot in each and every year during the entire term, or until the whole is cut, removed, and paid for; it is also further hereby agreed that all spruce and hemlock trees which are down, or which may hereafter fall, which will make fair merchantable lumber, shall be cut, removed, measured, and paid for by said Brooks. And said Brooks is also to use due care in cutting and removing said spruce and hemlock lumber, so as not to injure the hard-wood timber which may be on said Mountain lot. And

said Brooks is to cut and remove all the spruce and hemlock lumber and timber clean as he goes, and to do the same in a proper, skilful, and workmanlike manner, and he shall cut, remove, and pay for all such spruce and hemlock timber as will measure six inches through at the small end.

" It is also hereby agreed that the hemlock bark may be measured on the lot, or in the tannery yard of said Brooks, or at both of said places, as shall be found most convenient. The trustee of said United Society, or their agent, shall measure all the hemlock bark, and said Brooks or his agent may be present at all such measurements and see that the same is fairly and properly measured, and said trustee or their agent shall give said Brooks due notice of all measurements of bark in order that he or his agent may, if he desires, be present at such measurements. All spruce and hemlock logs shall be measured in the saw-mill yard, in lots of ten thousand feet and upwards, to be measured by the trustee of said United Society or their agent, giving notice, &c. in the same way as is to be done in the measurement of the said hemlock bark. All the hemlock and spruce timber and logs shall be measured by the rule known as Scribner's rule for measuring timber in the log, and shall be measured as follows, viz.: All logs sixteen feet long and under to be measured at the small end; all logs from and above sixteen feet to thirty feet in length are to be measured at the middle, and all logs above thirty feet in length shall be measured in sections of twelve feet each, all by Scribner's rule.

" And it is further hereby agreed that after the first year of this agreement the said United Society may and shall have the right to put on to said Mountain lot men to cut and remove the hard-wood timber, or they may sell the same to others to cut and remove, and said Brooks shall in no way hinder or interrupt them in so doing. Nor shall said United Society, or those whom they put on or sell to, in any way or manner hinder or interrupt said Brooks in his work of cutting, peeling, and removing the bark, spruce and hemlock timber, but both and all shall do all in their power to accommodate each other.

" And said Brooks shall as often as he shall get ten thousand or more feet of lumber ready to be measured, and when he shall have a quantity of bark peeled and ready for measurement he

shall notify the said United Society or their agent of that fact, and the same shall be then measured as before stated."

Writ dated October 19, 1885, and returnable to the Superior Court.

The case was sent to an auditor, who made a report, in substance as follows: At the time of making the contract the parties thereto were and they still are residents of this county. The defendant, working under it, has cut and sold from the premises referred to therein two hundred and eleven thousand feet of spruce lumber, one hundred and fifty thousand feet of hemlock lumber, and one hundred and nine cords of bark. A few thousand feet of timber, cut under the authority of the defendant, remain on the lot, but the defendant has paid for all timber and bark cut on said lot by him or his authority, the last payment being made about July 1, 1884, by a note which matured about September 1, 1884. No peeling of bark has been done by the defendant, or by any one acting under him, on said lot, since the fall of 1880. The last cutting of timber on the lot by the defendant, or those claiming under him, was done in the spring of 1884. The plaintiff has in all respects complied with its part of said contract. There is a quantity of spruce and hemlock timber, with bark, now growing on the lot mentioned in the contract, and covered by its terms or stipulations.

The plaintiff contended that said contract, being under seal, operated to convey to the defendant a present or immediate title to the spruce and hemlock timber and hemlock bark growing on said lot, with a certain interest in the soil of the lot, and that, under said contract, it was entitled to recover, as damages, the value of said spruce and hemlock timber and bark so growing on said lot, at the price therefor named in said contract, with interest thereon.

The defendant contended that said contract was executory only, and that it did not, by its terms and in legal effect, at once transfer to the defendant the title to the said spruce and hemlock timber, and hemlock bark, and that, under said contract, the plaintiff could only recover such damages as it should prove it had suffered; and that said damages must be assessed upon the basis that the said timber and bark, so far as the same were

unsevered from the soil, had continued, since the execution of said contract, the property of the plaintiff.

The defendant further contended, that, if said contract was to be construed as conveying to the defendant, immediately upon its execution, the title to, and ownership of, said timber and bark, and an interest in the soil of said lot, then the said contract was invalid by the law of the State of Vermont. Upon this question were cited in evidence the Gen. Sts. of Vt. c. 65, § 4, and the following decisions of the Supreme Court of that State. *Day* v. *Adams*, 42 Vt. 510. *Mining & Quarrying Co.* v. *Windham County Bank*, 44 Vt. 489. *Cady* v. *Sanford*, 53 Vt. 632.

The parties agreed that the time for getting off from said lot the hemlock timber and bark should be considered as having expired on January 1, 1884, and for getting off the spruce timber on January 1, 1885.

The auditor found that on January 1, 1884, there were left standing on said lot one hundred and fifty thousand feet of hemlock timber, and one hundred and sixteen cords of hemlock bark, and that on January 1, 1885, there were left standing on said lot two hundred and thirty thousand feet of spruce timber, all of which it was the defendant's duty, according to the terms of the said contract, to have cut, removed, and paid for.

The auditor further found, that, if the plaintiff's contention was correct, it was entitled to recover $1062.25, with interest; and that, if the defendant's contention was correct, the plaintiff was entitled to recover $300, with interest from the date of the writ.

At the hearing, before *Bacon*, J., the auditor's report was put in evidence, and the judge ruled that the plaintiff was entitled to recover the larger sum stated in the report, and ordered judgment accordingly. The defendant alleged exceptions.

*A. Potter*, for the defendant.

*A. J. Waterman & E. M. Wood*, for the plaintiff.

KNOWLTON, J. We are to determine in this case whether the writing declared on passed a title to the defendant in the trees growing upon the land, or whether it was an executory agreement for the sale of chattels, to take effect after they should appear in the form of timber, lumber, and bark.

An oral contract purporting to be a present sale of growing wood and timber, with a privilege of entering upon the land to remove it, is held not to be within the statute of frauds, but a sale of chattels, which changes the ownership as fast as the trees are severed from the real estate under the license granted to the purchaser. *Claflin* v. *Carpenter*, 4 Met. 583. *Giles* v. *Simonds*, 15 Gray, 441. *Drake* v. *Wells*, 11 Allen, 141. If a contract for the sale of growing wood and timber is in the form required for a conveyance of real property, it becomes a question of construction, upon the language of the whole instrument, whether it was intended immediately to pass a title to an interest in land, or whether by its terms it is executory. *White* v. *Foster*, 102 Mass. 375.

In the case at bar, the property was in Vermont, and the parties entered into a contract, under seal, which was not signed in the presence of two witnesses, or acknowledged, or recorded, as was required by the law of that State, to make a conveyance of an interest in land good against others than the grantor and his heirs. By the first language of stipulation in the instrument, the plaintiff agreed to sell, and the defendant agreed to buy, "all the hemlock bark, and the hemlock and spruce timber, now standing," &c. In the next sentence the defendant agreed " to purchase, take, cut, and remove " the timber and bark " within four years " from the date of the agreement. Then followed provisions as to the quantity to be cut in each year, the prices to be paid per cord for the bark, and per thousand for the hemlock lumber and for the spruce timber, and the times for payments. Measurements were to be made by the plaintiff or its agent, at places specified in the contract, with notice to the defendant in all cases to enable him to be present at them. Other details for proceeding in execution of the contract were inserted, with a stipulation in these words, " It is also further agreed that all spruce and hemlock trees, which are down, or which may hereafter fall, which will make fair merchantable lumber, shall be cut, removed, measured, and paid for by said Brooks."

The language of the writing was "agrees to sell," and "agrees to buy," not "sells," and "buys." In the second sentence four years were given in which to perform the agreement "to purchase,"

as well as the agreement "to take, cut, and remove" the timber. The instrument in all its parts seemed to look to future action and future results, rather than to a present change of title. The property to be transferred had no existence in the form in which it was referred to in the contract. It was called bark, lumber, and timber, and was to be first put into that form, and then measured and paid for, at certain prices by the cord and by the thousand.

The general rule as to sales of personal property is, "that where any operation, as surveying, weighing, measuring, counting, or the like, remains to be performed, in order to ascertain the price, or the quantity, or the parcel to be delivered, the contract is incomplete, and the property does not pass." *Mason* v. *Thompson*, 18 Pick. 305.

Interpreting this instrument in the light of all its provisions, we find it to have been, not an executed contract of sale, but executory. It follows, that, so long as the timber and bark remained standing, no property in it passed under the contract, and that the value of the wood and timber left uncut upon the lot should not have been included in the damages awarded to the plaintiff at the trial. Upon the facts there presented, the plaintiff should have been permitted to recover, as damages for the non-fulfilment of the defendant's contract, $300, and interest from the date of the writ.

*Exceptions sustained.*