GEORGE W. FISH *vs.* EDWARD C. CAPWELL *et al.*

The owner of a lot of land sold the growing trees thereon and executed a writing under seal, dated December 13, 1892, which reads as follows:

" Know all men by these presents that I . . . . have sold to G. . . . . and C. . . . . all of the standing wood on a certain lot of land situated (describing the lot) To Have and to Hold the same to said G. and C. their heirs executors and administrators, with two years from the date hereof to cut and remove said wood in, they having paid me the sum of Fifty dollars, being in full for said standing wood, the receipt of which is hereby acknowledged. In witness," &c.

The instrument was not acknowledged and recorded as required for deeds of real estate and terms exceeding one year by Pub. Stat. R. I. cap. 173, §§ 3, 4.

Subsequently the lot owner conveyed the land to F. In an action of trespass *quare clausum fregit* brought by F. against G. and C. for cutting and removing trees from the land,

*Held*, that the instrument was to be construed not as passing any interest in the land, but as an executory contract or parol license which was revocable, and that the conveyance of the land to F. operated as a revocation because the license as to him was void.

PLAINTIFF'S petition for a new trial. Certified from the Common Pleas Division for Kent County.

*July* 24, 1894. STINESS, J. This action of trespass *quare clausum fregit* was brought by the plaintiff, grantee of Nicholas Brown, to recover damages for cutting and removal of trees from his close, by the defendants, who justified under a writing signed and sealed by said Brown, as follows, viz. : —

" Know all men by these presents that I, Nicholas Brown, of Coventry, R. I., have sold to Oliver H. Greene, of said Coventry, and Edward C. Capwell, of West Greenwich, R. I., all of the standing wood on a certain lot of land situated in said West Greenwich, bounded as follows : . Northerly by the . Greene land, so called ; Easterly by a wall ; Southerly by land of James Rathbun, and Westerly by land of Edward C. Capwell, estimated to contain ten acres. To Have and to Hold the same to said Greene and Capwell, their heirs, executors and administrators, with two years from the date hereof to cut and remove said wood in, they having paid me. the sum of Fifty dollars, being in full for said standing wood, the receipt of which is hereby acknowledged. In Witness Whereof I hereunto set my hand and seal at Coventry, R. I., Dec. 13, 1892.

" In presence of " NICHOLAS BROWN. (L.S.)"
" S. W. Griffin.

This instrument was not acknowledged and recorded as required for deeds of real estate by Pub. Stat. R. I. cap. 173, §§ 3, 4.

The plaintiff asked the judge to rule that this was a mere license from Brown, revocable at his will, and that his deed

to Fish revoked it. The judge denied these requests, and ruled that if the plaintiff knew of this instrument at the time he bought the land he was bound by it and could not maintain the action. To these rulings the plaintiff excepted, the verdict being for the defendants.

The first question is, what was the nature of the instrument; did it convey an interest in land or not? In 1 Greenleaf's Cruise on Real Property, * 55, § 45, note, the learned editor says: "The cases on this much vexed question are extremely contradictory; but the principle now most generally recognized seems to be this, that in contracts for the sale of things annexed to and growing upon the freehold, if the vendee is to have a right to the soil for a time, for the purpose of further growth and profit of that which is the subject of sale, it is an interest in land, within the meaning of the fourth section of the statute of frauds, and must be proved by writing; but where the thing is sold in prospect of separation from the soil immediately, or within reasonable and convenient time, without any stipulation for the beneficial use of the soil, but with a mere license to enter and take it away, it is to be regarded as substantially a sale of goods only, and so not within that section of the statute; although an incidental benefit may be derived to the vendee from the circumstance that the thing may remain for a time upon the land." The same distinction between pernancy of the soil and products bought with a view to their separation from it is also stated in 1 Greenleaf on Evidence, 14th ed. § 271. In Browne on the Statute of Frauds, 4th ed. §§ 235 to 258, this subject is very thoroughly discussed and the general rule deduced that where the intention is to convey a mere chattel, though it may in the *interim* be a part of the realty, it is not affected by the statute of frauds; but if it is to confer an exclusive right to the land for a time, for the purpose of making a profit of the growing surface, it is within the statute and must be in writing, even though the purchaser's real profit may come from the sale of the produce of the land as a chattel. On the other hand, Professor Washburn gives, as an attempt to harmonize decisions, the result that a sale of

growing trees or other *fructus naturales*, when they are not
to be severed at once, but are to remain in the soil some
definite or indefinite time, is generally regarded as a grant of
an interest in the land.    3 Washburn on Real Property, 5th
ed. 368.    Mr. Benjamin states the rule in this way; that
where a sale is made which vests the property at once in the
buyer before severance, a distinction is made between *fructus
naturales* and *fructus industriales*, the former being an in-
terest in the land, which is within the statute of frauds.    1
Benjamin on Sales, (Kerr's ed.) § 136.

We think the better reason is with the view which holds
the sale to carry a chattel interest and not an interest in the
land.    Evidently the parties to a sale of standing trees, as
in this case, have in mind the trees as timber, and not the
land.    They are not bargaining for occupation and would not
often think to clinch the trade by a deed.    They have con-
tracted for wood, which happens not to have been cut; but
why should a mere contract of that sort be different in legal
effect from a contract for wood which has been cut ?    If by
its peculiar terms it necessarily involves an occupation of land
there is reason for it, but not otherwise.    If a man sells cut
wood, he may refuse to deliver it and become liable for a
breach of contract.    We see no reason why the same rule
should not apply where the thing sold is standing wood sim-
ply.    What the buyer pays for and expects to get is not an
interest in land but trees severed from the land.    The whole
thing rests in contract.    This view is supported by respecta-
ble authority.    It is very clearly stated by Bigelow, C. J., in
*Drake* v. *Wells*, 11 Allen, 141, where it is held that a sale,
such as the one before us, does not pass an interest in land
but only in the trees when they are severed from the land;
that it is an executory contract for the sale of chattels when
they shall be cut, with a license to enter on the land for the
purpose of removal.    Before they are cut the license may be
revoked, otherwise it would amount to an interest in the land.
In some of the cases the contract has been oral and in others
written, but we do not see that this is important, for, if the
sale be an executory contract, either form is sufficient.    To

the same effect are *Silsby* v. *Trotter*, 29 N. J. Eq. 228; *Herrick* v. *Newell*, 49 Minn. 198; *Poor* v. *Oakman*, 104 Mass. 309; *Cain* v. *McGuire*, 13 B. Mon. 340; *Byassee* v. *Reese*, 4 Metc. (Ky.) 372; *McClintock's Appeal*, 71 Pa. St. 365; *Sterling* v. *Baldwin*, 42 Vt. 306. In *Owens* v. *Lewis*, 46 Ind. 488, there is as thorough an examination of this subject as can be found anywhere, with the conclusion that a contract for the sale of growing trees *is* a contract for the sale of an interest in land. See also *Williams* v. *Flood*, 63 Mich. 487. While we must concede that this view is taken by the greater number of authorities, yet we are constrained to think that the other view, that such a sale is an executory contract for trees to be severed from the land, and so not within the statute of frauds, is much more sensible. From the nature of the transaction it is plain that what the buyer is after is wood, not land; if so, we do not see why we should say that, by legal construction, he buys an interest in land and not wood. The buyer has just the same rights and remedies under the contract as we construe it that he would have for a sale of any chattel; whereas, under a contract by parol, or in writing not conformable to the statute, if it be held to be an interest in land, he would have none at all.

In this case there was a written instrument, which was substantially a deed of the trees; but if we give effect to it, as a deed of an interest in land, we must say that it is more than a deed of trees, and that it practically amounts to a lease of the land for two years; because under it the purchasers might fell the trees at once and obstruct the use of the land for any other purpose for nearly all that time. Now, the parties have made no such express agreement. It is more reasonable to imply that the owner meant to retain the possession and use of the land, subject to the license to remove the trees, than that he virtually surrendered it under such a license. If the deed carries an interest in land, suppose the purchaser refuses to take the trees; what then? The owner of the land cannot get back the interest he has conveyed, so as to be able to deal with another, unless he also can get a deed from the purchaser. Yet who would think of a pur-

chaser of trees making a deed back in order to clear the title? The fact is, the parties have simply made a contract, and it ought to be treated as such; and putting it into the form of a deed does not make anything more than a simple contract. One party has agreed to turn a part of his realty into personalty and sell it to the other. If he had agreed to turn cattle into beef he would not be held to convey a present interest in the cattle, and there is no greater reason to hold that in the former case he conveys a present interest in the land. Courts have frequently tried to avoid the full effect of their construction of these contracts by making a distinction between the natural growth of the land, *fructus naturales*, and crops produced by tillage, *fructus industriales;* calling the former a contract for realty and the latter for chattels. But we see no logical ground for this distinction. They are both a part of the realty until they are severed. The fact that the policy of the law allows the latter to go to the executor or administrator as a reward for the labor of the husbandman does not change its character in the meantime. The better reason, as it seems to us, is to put both classes on the same footing and treat them as contracts for the things to be severed.

Construing this contract, then, as amounting only to an executory contract or parol license, it follows that it was revocable. *Foster* v. *Browning,* 4 R. I. 47; *Owens* v. *Lewis,* 46 Ind. 488; and the conveyance to the plaintiff operated as a revocation, because, as to him, the license was void. *Thurber* v. *Dwyer,* 10 R. I. 355.

The refusal to charge as requested must therefore be held to be erroneous, and a new trial granted.

*Charles J. Arms,* for plaintiff.

*George T. Brown,* for defendants.