Richbourg et al. v. Rose—Syllabus.

J. A. RICHBOURG AND W. A. RICHBOURG, PARTNERS TRADING
AND DOING BUSINESS AS J. A. RICHBOURG & COMPANY,
PLAINTIFFS IN ERROR, v. E. P. ROSE, DEFENDANT IN
ERROR.

1. As to the matter of the attestation of a deed, our statute
does not require any particular form of words for the
attestation clause of a deed. The phrase commonly used
in this state to denote that the persons signing are wit-
nesses is "signed, sealed and delivered in the presence
of," but any phrase which clearly denotes that the per-
sons signing were witnesses will be valid.

2. Where a deed has the names of two persons written in the
place where the names of subscribing witnesses are
usually placed, and the letters "wit" are written above
the names of the two persons, and where the testifican-
dum clause is "in witness whereof we hereunto set our
hands and seals, this the 4th day of May, 1903," other
facts showing delivery, the attestation of the deed is
sufficient.

3. The trial court is authorized to regulate the order of the
introduction of evidence, and its discretion in this mat-
ter will only be interfered with by this court where
clearly abused.

4. A sale of standing timber, is a contract concerning an
interest in land, within the meaning of the statute of
frauds.

5. A parol agreement or an executory contract for the sale
of growing trees, the trees to be severed and taken from
the land by the vendee, will amount to a license for the
vendee to enter upon the vendor's land for the purpose
of making such severance; and if the license is not
revoked before the trees are severed, the title to the
trees will vest in the vendee, and the license after such

severance will become coupled with an interest and irrevocable, and the vendee will have a right to enter and remove the trees thus severed; but if, before the trees are severed, the vendee should revoke such license, no title will pass to the vendee and no rights will vest by virtue of such parol agreement or executory contract.

6. A validly executed deed of sale of standing timber and lease of the land for turpentine purposes, duly acknowledged and recorded, is not revoked by the subsequently executed deed of conveyance of the land made by the same grantor.

7. An action of replevin is one for the recovery solely of personal property, and can not be maintained to recover real property.

8. Crude turpentine in turpentine boxes in the pine trees in a state to be dipped up, is personal property. The turpentine crop is properly classed with *fructus industriales*, for it is not the spontaneous product of the trees, but requires annual labor and cultivation.

9. The paintiff, in an action of replevin, must show right of possession in himself to the property replevied. He can only recover upon the strength of his own right of possession.

10. In an action of replevin, a plea of not guilty puts in issue, not ony the right of the plaintiff to the possession of the property replevied, but also the wrongful taking and detention thereof. Under such plea the defendant can give any evidence of a special matter which amounts to a defense to the plaintiff's cause of action to show that the plaintiff is not entitled to the possession of the property replevied.

11. Where property annexed to the freehold is severed therefrom, it becomes personal property so as to become

Richbourg et al. v. Rose—Syllabus.

recoverable by an action of replevin. But in order to maintain such action the plaintiff must have the actual or constructive possession of the land, and as the title to land cannot be tried *ex directo* in replevin, if the series of acts in which the severance has occurred are sufficient to create an adverse possession in the defendant, replevin cannot be maintained.

12. The occupation of pine land by annually making turpentine on it, is such an actual possession as will oust a constructive possession by one claiming merely under a superior paper title.

13. At the trial in an action of replevin, defendant offered in evidence deeds under which they claimed to hold possession. These deeds were admissible to show claim of right, followed by proof of adverse possession, and as defining the extent of the possession claimed.

14. The court charged the jury as follows: "If the jury should find from the evidence that has been introduced before them, that the plaintiff was the owner of pine trees located upon lands described in the declaration by a conveyance from persons who derived title to the land by title from the United States government, and that the defendants were in possession at the time of the institution of this suit of crude turpentine in the boxes located on this land, and they were not there with the plaintiff's consent, that is they were not in possession with the plaintiff's consent, then the jury should ascertain how much of the turpentine there was, and its value, and render a verdict for the plaintiff for the amount so found." *Held*, this charge is erroneous as excluding the contention that defendants were in adverse possession, claiming under color of right and were not trespassers.

This case was decided by Division B.

Writ of Error to the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the Court.

*Daniel Campbell & Son,* for Plaintiffs in Error;

*S. K. Gillis* and *Avery & Avery,* for Defendant in Error.

PARKHILL, J.: On the 25th day of April, 1906, the defendant in error, hereinafter called the plaintiff, instituted an action of replevin against the plaintiffs' in error, who for convenience will be known elsewhere in this opinion as the defendants, in the circuit court for Walton county, to recover the crude turpentine in the turpentine boxes in the pine trees on the W ½ of the S. E. ¼ and the W, ½ of N. E. ¼ of Section 26, Tp. 3 N. R. 23 W., in Walton county, Florida, alleged in the affidavit to be of the value of $125.00. The property was redelivered to defendants upon their forthcoming bond. On the 7th day of May, 1906, the plaintiff filed his declaration, alleging therein that defendants wrongfully detained from the plaintiff the said personal property, the crude turpentine as aforesaid, from the plaintiff's possession; that said property was of the value of $125.00, and claimed $250.00 damages. On the 4th day of June, 1906, the defendants filed a plea of not guilty and on the 3rd day of October, 1906, an additional plea "that the said property is not the property of plaintiff." The plaintiff joined issue on both pleas. On the 3rd day of October, 1906, a trial was had, resulting in a verdict in favor of the plaintiff for twelve barrels of crude gum of the value of $5.50 per barrel, $66.00. A motion for new trial was overruled, to which ruling the defendants excepted. Final judgment was rendered on the verdict, from which verdict, defendants

seek relief here by writ of error.   Three other causes between the same parties, of a similar nature, pending in the court below, by agreement, depend upon and will abide the decision in the instant case.

1.  Passing by the first and second assignments of error, to consider them in their logical order, we will direct our attention first to the third assignment, as follows: "The court erred in admitting in evidence the timber lease or deed from J. B. Allen and wife to Rose and Johnson over defendants' objection."   This assignment is based upon the introduction in evidence of the following paper writing by the plaintiff:

"State of Florida,
Walton County.

Know all men by these presents, That we, J. B. Allen and wife, Alice Allen, for and in consideration of the sum of one hundred and fifty ($150.00) to us in hand paid by Johnson & Rose the receipt of which is hereby acknowledged have granted, bargained and sold and by these presents do bargain, sell and convey unto the said Johnson & Rose all the pine timber now standing upon the lands, to wit: W. ½ of S. E. ¼ and W. ½ of N. E. ¼ of Section 26 in Township 3 North of Range 23 West, containing 160 acres, situated and lying in Walton County, Florida.

We further grant, bargain, sell and lease unto the said Johnson & Rose the above described lands to be used for turpentine purposes and privileges giving and granting unto the said Johnson & Rose the right at any time from the date hereof until the 1st day of May, 1910, to enter upon and work said timber for turpentine purposes as well as to cut and remove said timber from said land with the right of ingress and egress to and from same. We warrant the title of said lands and its freedom from all incumbrances.

In witness whereof we hereunto set our hands and seals, this the 4th day of May, 1903.

| Wit. | | his | |
|---|---|---|---|
| J. R. Smith, | | J. X B. Allen, | (Seal.) |
| his | | mark | |
| Joe X Allen. | | Alice Allen. | (Seal.) |
| mark. | | | |

State of Florida,
Walton County.

Before the subscriber personally appeared J. B. Allen and Alice Allen, known to me to be the individuals described, and acknowledged that they executed the foregoing instrument for the uses and purposes therein set forth, and the said Alice Allen, on a private examination by me, held separate and apart from her husband, acknowledged and declared that she executed the same freely and voluntarily, and without fear, apprehension, compulsion or constraint of or from her husband, and for the purposes of renouncing, relinquishing and conveying all her rights of whatsoever kind in and to the said property: Given under my hand and seal this 4 day of May, A. D. 1903.                    (L. S.)    E. W. Carter, J. P.

Filed for record, this 3 day of June, A. D. 1903, at 10

Richbourg et al. v. Rose—Opinion of Court.

o'clock a. m., and recorded in Vol. 14, at page 451 of deeds and record verified.

(L. S.)    James A. McLean, Clerk Circuit Court,
Walton County, Florida".

To the reading of the same in evidence, the defendants objected on several grounds. The objections argued here are as follows: "It does not purport to be signed, sealed and delivered in the presence of two witnesses; there is no attestation clause to it." The judge overruled the objections thereto and admitted same in evidence. To which ruling the defendants excepted.

It is urged in argument that "this instrument purported to convey the turpentine privileges upon a certain piece or parcel of land; it was offered in evidence as a conveyance of the interest in land; it was necessary, in order to operate as a conveyance of the interest in land, that it be signed, sealed and delivered in the presence of two witnesses," and that the letters "wit" above the names of J. R. Smith and Joe Allen are not sufficient to show a signing by grantors in the presence of two witnesses.

We agree with counsel for plaintiff in error that this instrument purports to grant an estate in land for a term of more than two years, and, under the provisions of Section 2448 of the General Statutes of 1906, and Section 1950 of the Revised Statutes of 1892, "no estate or interest of freehold, or for a term of years of more than two years, or any uncertain interest of, in or out of any messuages, lands, tenements or hereditaments shall be created, made, granted, transferred or released in any other manner than by deed in writing, signed, sealed and delivered in the presence of two subscribing witnesses."

There is conflict of authority, both in England and in

this country, upon the question whether a sale of growing trees is the sale of an interest in or concerning land, so as to be within the operation of the statute of frauds. The great weight of authority in this country is that a sale of growing or standing timber is a contract concerning an interest in land, and within the statute of frauds. Hirth v. Graham, 50 Ohio St. 57, 33 N. E. Rep. 90, 19 L. R. A. 721, and cases cited; Owens v. Lewis, 46 Ind. 488, S. C. 15 Am. Rep. 296, and cases cited and reviewed; Garner v. Mahoney, 115 Iowa 356, 88 N. W. Rep. 828; Wiggins v. Jackson, 24 Ky. Law 2189, 73 S. W. Rep. 779.

In Hirth v. Graham, *supra,* the court after reviewing the cases pro and con on this question said: "The question is now for the first time before this court for determination; and we are at liberty to adopt that rule on the subject most conformable to sound reason. In all its other relations to the affairs of men, growing timber is regarded as an integral part of the land upon which it stands; it is not the subject of levy and sale upon execution as chattel property, it descends with the land to the heir and passes to the vendor with the soil. * * * Sales of growing timber are as likely to become the subjects of fraud and perjury as are the other integral parts of the land, and the question whether such sale is a sale of an interest in or concerning lands should depend, not upon the intention of the parties, but upon the legal character of the subject of the contract, which, in the case of growing timber, is that of realty. This rule has the additional merit of being clear, simple and of easy application qualities entitled to substantial weight in choosing between conflicting principles."

This is not an open question in this State. In Jenkins v. Lykes, 19 Fla. 148, text 158, the court held that a "sim-

ple contract for a sale of the trees is void as a contract for an interest in land, standing trees being of the realty." And in King v. State, 43 Fla. 211, 31 South. Rep. 254, the court considering an instrument of like force and effect as the one in the instant case, held that it purported to grant an estate in land for a term of more than two years, and was executed with only one subscribing witness, and was under the above statute, invalid and inffectual as a lease for such term.

We must determine, then, the sufficiency of the attestation clause of the lease from Allen to Johnson & Rose.

In Hogans v. Carruth, 19 Fla. 84, text 90, this court said: "As to the matter of the attestation of the deed, our statute does not require any particular form of words for the attestation clause of a deed, and the attestation clause of a deed in the words: 'Bargained, sold, transferred and acknowledged in presents (presence) of us,' where the testificandum clause is: 'In witneess whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written,' other facts showing delivery being established is sufficient. The term 'acknowledged' indicates that the parties affirmed the signing and sealing to be their act before these witnesses."

In 9 Am. & Eng. Ency. Law (2nd edition), 150, it is said:

"It is advisable for witnesses to sign under the phrase commonly used in the State where the land lies, yet any phrase which clearly denotes that the persons signing were witnesses will be valid."

Do the letters "wit" written above the names of J. R. Smith and Joe Allen clearly denote that these persons were witnesses, so as to comply with our statute herein

quoted? The answer to this question is not without difficulty. The phrase commonly used in this state to denote that the persons signing are witnesses is "signed, sealed and delivered in the presence of." An attestation "sealed and delivered in presence of" the subscribing witnesses has been held sufficient. Fosdick v. Risk, 15 Ohio 84, S. C. 45 Am. Dec. 562. In that case the court said: "True, the words of the statute are that the witnesses shall attest the 'signing and sealing,' but, really, to require the strictness insisted upon by the defendants' counsel, would be going a great length; it would be taking one step more towards that point to which we seem to be progressing with railroad speed—the point of declaring all the land titles in the State doubtful, defective, or uncertain. The same techincal nicety is not required in the execution and acknowledgment of deeds as in special pleadings. If deeds are acknowledged substantially in accordance with the statute, it is all that can be required. The signing and sealing of deeds is usually done at one and the same time, unless, perhaps, the scrivener who writes them shall have attached the seal at the time of writing, and previous to the signature. In such case the sealing is adopted by the signature of him who executed the instrument. It is not customary for a man to sign on one day, and another make his scrawl or attach a wafer. There is not, I presume to say, one case in a thousand in which the same person who witnesses the sealing does not witness the signature also. And after all, it is the delivery which gives effect to the instrument."

In the case of Arrington v. Arrington, 122 Ala. 510, 26 South. Rep. 152, the court said: "The deed has the names of two persons written in the place where the names of subscribing witnesses are usually placed, and found upon

such instruments, but the word 'Attest' or 'Witness' does not appear alone or in connection with these names. *Nor are there any other* words appearing upon the deed showing the purpose of their signatures.    *   *   *   At common law attesting witnesses to a deed were not essential to its validity as a conveyance of lands, and prior to the adoption of the statute requiring them to be attested or acknowledged this rule prevailed in this State.   *   *   * The usual clause to denote that the witnesses sign as such is:  Signed, Sealed and Delivered in the presence of the witnesses writing their names thereunder.   *   *   * The manifest object of requiring an attestation of subscribing witnesses is to enable the grantee to prove the execution by the grantor of the deed, and to show the circumstances attending the sealing and delivery.  No formal words are requisite under the statute to be incorporated in the deed, or upon it, to show that the names subscribed are those of witnesses.  Its language is: 'The execution of such conveyance must be attest by one witness, or, when the party cannot write, by two witnesses who are able to write and must write their names as witnesses.' Code 1896, Sec. 982.  True, they must write their names as witnesses upon the deed, but we cannot hold if from an examination of the instrument it clearly appears, as it does in this case, that the only purpose for which the names were written was to attest the signature of the grantor to the deed, that they are not witnesses, simply because of the failure to employ some word or words indicating the purpose for which their names were written."

We do not overlook the difference between the Alabama statute and our own in this respect, but the applicability of the persuasive reasoning of the court in the case cited

is apparent. A deed properly delivered is not invalid because the attestation clause recites that it was signed and sealed only, without reciting that it was delivered. Bradley Fertilizer Co. v. Pace, 80 Fed. Rep. 862, 26 C. C. A. 198; Hogans v. Carruth, *supra.*. There was proof of the proper delivery of this deed; and it was shown also that the deed was in possession of the grantee and that the deed was recorded, which is prima facie evidence of its delivery. Southern Life Ins. and Trust Co. v. Cole, 4 Fla. 359; Campbell v. Carruth, 32 Fla. 264, 13 South. Rep. 432; Billings v. Stark, 15 Fla. 297; Ellis v. Clark, 39 Fla. 714, 23 South. Rep. 410. Were the attestation clause of the deed in the instant case "signed and sealed in the presence of us" it would clearly be sufficient. The concluding clause of the deed in question declares "in witness whereof we hereunto set our hands and seals." Under those words, on the left hand side of the page, in the place where the names of witnesses to the execution of a deed are usually found, appear the word or letters "Wit" and the names of two persons. We have no difficulty in coming to the conclusion that "wit" means and stands for the word "witness," or "witnesses," and, therefore, Smith and Joe Allen signed the deed as witnesses, and that they were witnesses of the setting of the hands and seals—of signing and sealing—of the grantors in the deed, as declared by them in the concluding clause of the deed. We think the deed shows substantially and clearly upon its face that it was signed and sealed in the presence of the two persons who purport to have signed the same as witnesses. In coming to this conclusion, we confine our decision to the objections raised.

II. The fourth assignment of error is: "The court erred in admitting in evidence the transfer of leases made

by Johnson and wife to E. P. Rose." The paper referred to here was a properly executed an and acknowledged and recorded transfer by J. N. Johnson of his undivided one-half interest in several timber leases, including the one from J. B. Allen and Alice Allen his wife, already introduced in evidence by the plaintiff. To the introduction in evidence of this paper, the defendant objected on the ground that the title of J. B. Allen in and to the *locus in quo* had not been traced back to the government; but plaintiff announced his intention to do so, and the objection was overruled, the paper admitted in evidence, to which ruling the defendants excepted. This ruling of the court was correct, because later the plaintiff offered and the court admitted in evidence letters patent from the United States to Joseph B. Allen for the land, covered by the lease from Allen to Johnson and Rose, already in evidence.

The trial court is authorized to regulate the order of the introduction of evidence, and its discretion in this matter will only be interfered with by this court where clearly abused. Wilson v. Johnson, 51 Fla. 370, 41 South. Rep. 395.

III.    The fifth, sixth, seventh and eighth assignments have been argued, and will be considered, together. They relate to the refusal of the court to admit in evidence a deed, duly executed, acknowledged and recorded, from J. B. Allen and wife to J. M. Barrow, purporting to convey the lands included in the lease by Allen to Johnson and Rose prior to the deed from Allen to Barrow. The other deeds covered by these assignments include a deed from Barrow to Madden, a deed from Madden to Settles, a deed from Settles to J. A. Richbourg & Co., and a deed from Barrow to J. A. Richbourg & Co., purporting to

convey the lands involved in this suit, and which had been leased to plaintiff Rose before the execution thereof. Upon being offered in evidence by the defendants, each deed was objected to by the plaintiff upon the ground that the "deed bore date subsequent to the date and record of the timber and turpentine lease from the original owner to the plaintiff, the source from which all these titles sprung." The objection was sustained and the court refused to allow the deeds to be read in evidence, to which ruling the defendants excepted.

Counsel for plaintiffs in error contend that the sale of the standing timber for turpentine purposes made by Allen & wife to Johnson & Rose was nothing but a mere license liable to revocation, and was revoked by the making of a subsequent conveyance by the licensor, without a reservation; that the timber lease from Allen to Johnson & Rose passed no interest in the land upon which the timber grew. In support of this contention, counsel cites Fish v. Capwell, 18 R. I. 667, 29 Atl. Rep. 840, 25 L. R. A. 159. The written instrument therein relied upon, not acknowledged or recorded as a deed, purporting to convey all the standing wood on a certain lot of land, with two years in which to cut and remove said wood, was construed not as passing any interest in the land, but as an executory contract or parol license, which was revoked by a subsequent conveyance of the land to another person. In a note in 25 L. R. A. 159, the author says: "While as the court states in the above case it refuses to follow the weight of authority upon the question how far a sale of standing timber is within the statute of frauds (see note to Hirth v. Graham, Ohio 19 L. R. A. 721) it seems to have at the same time applied the rule in force in States holding sales to be within the statute as to

attempted sales being regarded as a license. The only way to reconcile the two positions would seem to be to hold that no sale was effected until the timber was delivered. In other words that a sale could not be made of standing timber." Other cases cited by counsel hold that *an agreement to sell* another the wood and timber on certain land with a given time to remove it, is an executory contract for the sale of chattels to take effect when the timber is severed from the land, with a license to enter and cut the trees and remove them, and that this license is revocable at any time before the purchaser has entered and cut the trees. Fletcher v. Livingston, 153 Mass. 338, 26 N. E. Rep. 1001; Drake v. Wells, 11 Allen (Mass.) 141; United Soc. v. Brooks, 145 Mass. 410, 14 N. E. Rep. 622; Claflin v. Carpenter, 4 Met. (Mass.) 580, 38 Am. Dec. 381. To the same effect is the holding by this court in Jenkins v. Lykes, *supra.* Counsel are mistaken in their contention that the instrument relied upon in Jenkins v. Lykes, is similar to the one in the instant case. The instrument signed by Atkinson in the former case was nothing but a contract to cut the cedar within a reasonable time, the court saying on page 158: "The doctrine is that though the simple agreement for a sale of the trees is void as a contract for an interest in land, standing trees being of the realty, yet if executed by cutting the trees, the timber is converted into personalty, and was sufficient to vest a title thereto in the party acting under the license, he having complied with the conditions under which the license was granted." The instrument in that case contained no words of conveyance, simply stating: "This is to certify that I *have sold* to C. T. Jenkins * * * all the cedar now standing * * * The *condition* that the said C. T. Jenkins

*do* give the sum of one hundred dollars in a promissory note," &c. The instrument in the instant case is not a license, or executory contract or agreement to sell growing trees. It acknowledges receipt of payment of $150.00 by Johnson & Rose and recites that grantors "have granted, bargained and sold and by these presents do bargain, sell and convey unto the said Johnson & Rose all the pine timber now standing" upon the lands therein described. It provides "we further grant, bargain, sell and lease unto the said Johnson & Rose the above *described lands* to be used for turpentine purposes and privileges giving and granting unto the said Johnson and Rose the right at any time from the date hereof until the 1st day of May, 1910, to enter upon and work said timber for turpentine purposes as well as to cut and remove said timber from said land with the right of ingress and egress to and from same." This instrument, duly acknowledged and recorded, was not revoked by the subsequently executed deed of conveyance of the real property made by Allen and wife to J. M. Barrow. Owens v. Lewis, 46 Ind. 488; 15 Am. Rep. 295.

IV.    Plaintiffs in error contend that the deed from Allen and wife to Barrow and the other deeds under which defendants claimed, ought to have been admitted in evidence as showing "an adverse holding upon the part of the defendants, that they were in possession of the land under a claim of right, and even should the court find that the instrument from Allen to Rose and Johnson conveyed an interest in the land, the deeds offered by the defendants should have been read in evidence under their plea of not guilty to show how they were holding, and to show that if the plaintiff had any remedy that this was not the proper remedy, and the remedy should have been

by ejectment." This objection should be considered in connection with the contentions presented by the first and second assignments of error, and the motion for new trial: "That the turpentine replevied was in the boxes on the trees, so attached to the land as to be a part of the realty and not subject to replevin; that in order to maintain replevin plaintiff must be the owner of, or in possession of the property, and that the evidence does not show that the plaintiff was ever in possession of the turpentine that he sought to replevy."

The evidence in this case shows that the plaintiff never went into actual possession of the *locus in quo;* that he was engaged in the turpentine business in Walton county, and bought the land from Allen for that purpose, but before he needed the timber thereon, the defendants, having bought the same land as we have seen, went into posssssion of it and boxed and chipped the trees. While the turpentine was in the boxes, in a state to be dipped up, it was replevied by plaintiff.

We agree with counsel that an action of replevin is one for the recovery solely of personal property, and cannot be maintained to recover real property. 24 Am. & Eng. Ency. of Law (2nd ed.) 480. It is well settled, however, that turpentine in boxes, in a state to be dipped up, is personal property. It no longer forms a part of the tree, but has been separated by a process of labor and cultivation. The turpentine crop has been properly classed with *fructus industriales,* for it is not the spontaneous product of the trees, but requires annual labor and cultivation. As was said in State v. Moore, 11 Iredell's Law (N. C.) 70: "If, like the sap of the sugar maple, its flow were directed into a vessel set on the ground near the tree, no one would doubt its being severed from the realty. Now

this is the same in substance.   For the box, though in
the tree, is but a more convenient receptacle for the tur-
pentine, after it has been extracted or has been made to
exude from th pores, which contained it, while in the tree,
as a part of it.   When it ceased to be a part of the tree
it necessarily becomes a chattel." Crude.turpentine which
has formed on the body of the tree, and is called scrape,
is said to be personal property.   Lewis v. McNatt, 65 N. C.
63.    See, also, Branch & Thomas v. Morrison, 5 Jones'
Law (N. C.) 16, S. C. 69 Am. Dec. 770; Holt v. Holt, 57
Mo. App. 272; Brittain v. McKay, 1 Iredell's Law (N. C.)
265, S. C. 35 Am. Dec. 738; State v. Moore, 11 Iredell's
Law (N. C.) 70.

The plaintiff, to recover in this action, must show right
of possession in himself to the property replevied.   He
can only recover upon the strength of his own right of
possession.   Holliday v. McKinne, 22 Fla. 153.

In an action of replevin a plea of not guilty puts in
issue not only the right of the .plaintiff to the possession
of the property replevied, but also the wrongful taking
and detention thereof.   Under such plea the defendant
can give any evidence of special matter which amounts to
a defense to the plaintiff's cause of action, to show that
the plaintiff is not entitled to the possession of the prop-
erty replevied.   Holliday v. McKinne, *supra.*

Where property which has been annexed to the freehold
is severed therefrom, it becomes personal property so as
to become recoverable by an action of replevin  But in
order to maintain such action the plaintiff must have the
actual or constructive possession of the land, and as the
title to land cannot be tried, *ex directo* in replevin, if
the series of acts, in which the severance has occurred are
sufficient to create an adverse possession in the defendant,

replevin cannot be maintained. Washburn v. Cutter, 17 Minn. 361; 7 Smith's Lead. Cases, (6th Am. Ed.) 604; Cobbey on Replevin, Sec. 375. The possession here alluded to is something more than a mere act of trespass. It must be so long continued, and so far yielded to, as to constitute a possession to the exclusion of others, an occupancy, as distinguished from a mere act of trespass. Stockwell v. Phelps, 34 N. Y. 363, S. C. 90 Am. Dec. 710.

The owner in fee of wild land has the constructive possession thereof unless there be an adverse possession. Washburn v. Cutter, *supra;* Cobbey on Replevin, Sec. 378. See Jenkins v. Lykes, *supra.* Thus it is stated in the section cited from Cobbey on Replevin: "Where the land was in the actual possession of W. under a claim of right and adverse to the plaintiff, who it was held had the title, and cut a quantity of grass and sold the hay to the defendant, on replevin brought by the plaintiff against the defendant, *held,* that as W. was in possession under a claim of right he would be regarded as the owner until decreed otherwise, and that W. could convey a good title to the hay so sold. The courts have gone so far as to hold that where the defendant was in possession of the land in good faith and severed property therefrom, the real owner could not maintain replevin therefor, basing it on the ground that the title to the land could not be settled in this way. Where there is no adverse possession, the owner of the land may always bring replevin, or he may always bring it against the trespasser." In Powell v. Smith, 2 Watts (Pa.) 126, Gibson, C. J., said: "The principle which is to govern this case was settled in Mather v. Trinity Church, 3 S. & R. 509; Baker v. Howell, 6 Id. 476; and Brown v. Caldwell, 10 Id. 114; in which it was determined on principle and authority, that the right of property in a chattel

which has become such by severance from the freehold cannot be determined in a transitory action by a trial of the title to the freehold, because the title to the land might otherwise be tried out of the county. An action of *trover* or *replevin* for such a chattel therefore does not lie by a plaintiff out of possession. Independent of this technical inhibitory principle, which however is decisive, it would provoke much useless litigation and be attended with great practical mischief, if an owner out of possession were suffered to harass the actual occupant with an action for every blade of grass cut, or bushel of grain grown by him, instead of being compelled to resort to the action of mesne profits, after a recovery in ejectment, by which compensation for the whole injury may be had at one operation." See Anderson v. Hapler, 34 Ill. 436, and note thereto in 85 Am. Dec. 318; Harrison v. Hoff, 102, N. C. 126, 9 S. E. Rep 638. In Mather v. Ministers of Trinity Church, 3 S. & R. (Pa.) 509, Tilghman, C. J., said: "The explanation is, that he who has the general property in a personal chattel, need not prove possession, because the law draws the possession of the property. But he who claims only a *special* property, must prove, that he once had *actual* possession, without which no specific property is complete. That the law draws the possession to the property, of personal chattels unconnected with land, may be true, and yet it does not follow, that the possession is drawn in like manner, to the property of that kind of chattel, which was part of the soil, until severed from it; when the soil itself, at the moment of severance, was held adversely by another. I should rather suppose, that in such case, he who had possession of the land, had possession also of the stones dug from it, and against him, another person who had the *right to the possession of the land,* could not sup-

port trover." In order to constitute adverse possession as against the real owner, it must be such a possession as would, if continued for the period required by the statute of limitations, ripen into a perfect title and constitute a bar to the assertion of a legal title by the owner. The possession must be actual, visible, notorious, distinct and hostile. Washburn v. Cutter, *supra;* Washburn on Real Property, (3rd ed.) Vol. 3, p. 122.

The occupation of pine land, by annually making turpentine on it, is such an actual possession, as will oust a constructive possession by one claiming merely under a superior paper title. Bynum v. Carter, 26 N. C. 310. In Branch & Thomas v. Morrison, 5 Jones' Law (N. C.) 16, the court said: "In our case, however, suppose the land belonged to Blount's heirs, that does not give them a right to the turpentine which had been severed from the realty by the plaintiffs while they were in possession of the land; on the contrary, the turpentine, when by the labor and cultivation of the plaintiffs it was made personal property, became the property of the plaintiffs. So they are the true owners. The heirs of Blount, if they ever regain possession of the land, may have an action of trespass *quare clausum fregit,* 'for treading down grass,' against the plaintiffs, but they will have no right of action to recover this particular turpentine, either against them or the defendants for they never had a right of property in it, and cannot acquire either a right of possession or of property in respect to it by the *jus postliminii.*" Brothers v. Hurdle, 10 Iredell's Law (N. C.) 490, S. C. 51 Am. Dec. 400. It is there held that the owner of land cannot maintain trover for corn, fodder, etc., that had been raised on the land and severed while the defendant was in possession. The court said: "The amount of which would be,

13—S C

when one, who has been evicted, regains possession, he may maintain trover against every one who has bought a bushel of corn or a load of wood from the trespasser, at any time while he was in possession. This, especially in a country where there are no markets *overt,* would be inconvenient, and no person could safely buy of one, whose title admitted of question. The defendants' counsel took a distinction between things which are of annual cultivation, *e. g.,* corn, and such as are of the natural growth of the earth, *e. g.* trees. This distinction makes a difference to this extent : the former is personal property for some purposes before severance, the latter is not; but after severance both species become personalty, and the same principle is applicable." As was said in Washburn v. Cutter, *supra;* "Such adverse possession must amount to a disseizin of the real owner. There must be an actual entry upon the land, with palpable intention to claim the possession as his own, by the adverse claimant, and this claim of possession must be not the assertion of a previously existing right to the land but the assuming of a right to the land from that time and a subsequent holding with assertion of right. This intention to claim and possess the land is one of the qualities indispensable to constitute a disseizin, as distinguished from a trespass." The effect of color of title, when an entry is made and possession taken and held in accordance with it, is to define the extent of the possession claimed; but the entry and possession must be proved by acts sufficient to constitute such adverse entry and possession. Washburn v. Cutter, *supra.*

In the instant case the evidence shows that the plaintiff never went into actual possession of the *locus in quo,* never cut timber thereon, nor chipped trees, nor turpen-

tined them; that he saw the land after the trees were boxed, "that was last winter, last box season." Since that time, and at the time the turpentine was replevied, the defendants were in the exclusive possession of the trees and the land, their employees were there, cutting the boxes in the trees, chipping them, and dipping the turpentine, and hauling same away in barrels. Defendants had boxed, and were working, between six and seven thousand trees at the time the writ of replevin herein issued, and plaintiffs knew this for months and did not enter. At the trial defendants offered the deeds under which they claimed to hold possession. These deeds were admissible to show claim of right, followed by proof of adverse possession, and as defining the extent of the possession claimed. Washburn v. Cutter, *supra*. The plaintiff had the property in the trees, and also constructive possession theerof, as long as no one had actual possession thereof. His general property drew to it the possession and the right of possession. But this was not so if the defendants, under claim and color of right went into the exclusive, open, notorious, adverse possession of the *locus in quo*, acquiesced in for months by plaintiffs, and worked the trees, and by their labor and care made the crop of turpentine. Under such circumstances, plaintiff could not maintain this action of replevin.

V. The court charged the jury as follows: "If the jury should find from the evidence that has been introduced before them, that the plaintiff was the owner of pine trees located upon lands described in the declaration by a conveyance from persons who derived title to the land by title from the United States government, and that the defendants were in possession, at the time of the institution of this suit, of crude turpentine in the boxes located

on this land, and they were not there with the plaintiffs' consent, that is they were not in possession with the plaintiffs' consent, then the jury should ascertain how much of the turpentine there was, and its value, and render a verdict for the plaintiff for the amount so found." From what we have said, this charge was erroneous and misleading. If the defendants were in adverse possession, claiming under color of right, and were not trespassers, plaintiffs could not recover.

For the errors found the judgment is reversed.

TAYLOR and HOCKER, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.